In re McCLELLAN et al.

(Supreme Court, Appellate Division, Second Department. October 27, 1911.)

1. NAVIGABLE WATERS (§ 36*)—LANDS UNDER WATER—RIGHTS OF OWNERS OF PIERS.

At common law, an owner of piers has the right of reasonable access over the waters covering the surrounding lands, though title thereto is in the state, and he must under the statute keep the slip between his piers so dredged out, when necessary, as to permit the ordinary use thereof by commerce; but the possession and enjoyment of such rights do not create necessarily any title in fee in the lands alongside or between the piers, such title being acquired only by grant.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 36.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NAVIGABLE WATERS (§ 37*) — GRANTS TO MUNICIPALITIES — RIGHTS AC-
   QUIRED.

Greater New York Charter (Laws 1901, c. 466) §§ 83–88, empowering
the city to control the water front, and granting to it such lands covered
by water as are embraced within projected boundary lines of any street
in public use, or which may be subsequently opened for public use, etc.,
applies to any street intersecting the shore line; and the projected bound-
ary lines described embrace the boundary lines of a street then laid out
as intersecting the shore line, though a portion of it has not been actu-
ally opened for public use, but is thereafter opened for such use.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 37*)—GRANTS TO MUNICIPALITIES—RIGHTS ACQUIRED
   —"COMMERCE."

· The construction by the city of New York of a subway devoted to the
carriage of passengers is within a grant to the city by Greater New York
Charter (Laws 1901, c. 466) §§ 83–88, for the general purpose of naviga-
tion, intercourse, and commerce; the word "commerce" embracing the
carriage of passengers for hire.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 2, pp. 1287–1298;
vol. 8, pp. 7606, 7607.]

4. NAVIGABLE WATERS (§ 37*)—GRANTS TO MUNICIPAL CORPORATIONS—ILLE-
   GAL USE—RIGHT TO CONTEST.

The objection that the construction by the city of New York of a sub-
way for the carriage of passengers is not within the purpose of a grant
by Greater New York Charter (Laws 1901, c. 466) §§ 83–88, for the pur-
pose of navigation, intercourse, and commerce, is available only to the
state, and is not open to a subsequent grantee from the state of rights
expressly made subject to the rights granted to the city.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

Appeal from Special Term, Kings County.

Petition of George B. McClellan and others for the acquisition of
rights in land necessary for the construction of a branch of the mu-
nicipal subway system. From an order confirming the report of the
commissioners of appraisal, the Public Service Commission and the
City of New York appeal. Reversed, and matter referred back to
the commissioners for re-examination and a new report.

Argued before JENKS, P. J., and HIRSCHBERG, BURR,
THOMAS, and CARR, JJ.

Francis J. Byrne (Theodore Connoly, on the brief), for appellant
City of New York.

Charles E. Hotchkiss, for respondents.

CARR, J. This is an appeal from an order made at Special Term
in Kings County, which confirmed a report of commissioners in con-
demnation proceedings. The proceedings were begun by the rapid
transit commissioners, appointed under chapter 4 of the Laws of
1891, to acquire such rights in certain lands in the borough of Brook-
lyn, and land under water abutting the borough of Brooklyn, as were
necessary for the construction of a branch of the municipal subway
system, which, crossing under the bed of the East River, entered the
borough of Brooklyn at the foot of Joralemon street, in said borough,
thereby connecting Brooklyn with the subway system in Manhattan.

An amended map was filed to define and explain the precise locations in which these necessary rights were sought to be obtained. On this map certain parcels of water front property are shown, and numbered from 1 to 10, inclusive, of all of which the New York Dock Company, a corporation and a party to these proceedings, claimed an ownership in fee. By written stipulation between the petitioners and the New York Dock Company, the petitioners entered into immediate possession of certain of the parcels shown on said map for the purpose of constructing the subway in question. As a consequence of this entry into immediate possession and the carrying on of the work of construction, very considerable damage was done to the property and business of the New York Dock Company, which was temporary in its nature. The commissioners of estimate took proofs of the elements and extent of this temporary damage, as well as those offered to prove damages to the dock company resulting from the permanent occupation by the subway as constructed. In making their award, the commissioners did not state separately the items of temporary and permanent damage, but awarded a gross sum of $162,500 to the New York Dock Company in compensation for both temporary and permanent damages. The commissioners stated in their report that they found that:

"The New York Dock Company was the owner in fee of all the lots, pieces, and parcels of land and premises shown on the amended map adopted by the board of rapid transit railroad commissioners for the city of New York on June 15, 1905, and thereon designated by the parcels Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, subject, however, to the public easement for street purposes vested in the city of New York in that portion of said premises known as Joralemon street, being that portion of said street between the westerly side of Furman street and the bulkhead line or line of solid filling established by chapter 484 of the Laws of 1836, as said Joralemon street was laid out and opened by commissioners of estimate duly appointed, and whose report was confirmed by the Supreme Court, Kings county, on August 4, 1842."

It is urged on this appeal, by the legal successors to the petitioners, that, in making an award on the theory that the New York Dock Company owned a fee in all the parcels so enumerated in their report, the commissioners proceeded upon an erroneous theory, and that, therefore, their determination as to damages must be reversed. The record before this court is quite voluminous, but the real point of controversy, considering the only question raised on this appeal, may be stated and considered within reasonably brief limits. The substantial question of title is confined to the lands under water at the foot of Joralemon street which underlie the slip or basin between two piers owned by the dock company and known as piers 17 and 18. These lands are claimed by the dock company in fee, while the petitioners contend that that portion of them which has been taken for, and is now occupied by, the constructed subway was in fact owned in fee by the city of New York. The claim of the dock company is based upon a grant made by the state in 1902 and upon a claim of title arising out of circumstances existing before the grant of 1902. These circumstances will be examined first.

[1] There is no question that the dock company was the owner of piers 17 and 18 and that these piers were built and maintained

in pursuance of law. Prior to 1902 there was no grant from the state to the lands under water in the slip between these piers, from the bulkhead line out into the bed of the East River. Whatever rights the dock company had in these lands were such as, under common-law principles, were incident and appurtenant to the ownership of the piers above described. Under these principles, the owner of the piers had a right of reasonable access over the waters covering the surrounding lands, though title to such lands was in the state, and the owner had likewise a right and a positive duty, imposed by statute, to keep the slip between its piers so dredged out, when necessary, as to permit the ordinary use thereof by commerce. Langdon v. Mayor, etc., 93 N. Y. 129; White v. Nassau Trust Co., 168 N. Y. 149, 61 N. E. 169, 64 L. R. A. 275. The possession and enjoyment of these rights did not create necessarily any title in fee in the lands alongside or between the piers. Title in fee to such lands could be acquired only by grant, and not as a mere incident or appurtenance to the ownership of the piers.

[2] This brings us to a consideration of such rights as the dock company acquired by grant from the state in 1902. A title in fee to the land under water here in controversy was granted apparently by the state to the dock company; but the express terms of said grant provided that it was made—

"subject to such right, title and interest as the city of New York has under the provisions of its charter to lands under water in front of projected streets, if any such there be, and such right, title and interest, if any, are excepted from this grant and reserved to said city."

The provisions of the charter of the city of New York covering this subject-matter are set forth in sections 83 to 88 thereof, inclusive (chapter 466 of Laws of 1901, amending chapter 378 of Laws of 1897). Section 83 provides as follows:

"To the end that the city of New York, as herein constituted, may be enabled to make needful provisions for the navigation, intercourse and commerce of the city and adequately to develop and secure the same now and in the future, the said city shall have the control as herein and in this act provided, of the water front of the entire city, subject, however, to the rights of private owners of property, and also power to establish, construct, acquire, own, maintain and enjoy all ferries, public wharves, docks, piers, bulkheads, basins, slips, streets, approaches and spaces, and all other public structures, adjuncts and facilities necessary or proper for the navigation, intercourse and commerce, foreign and domestic, of the city. To these ends, in addition to all other grants, there is hereby granted in fee to the said city of New York, as herein constituted, in all the public streams, rivers, sounds, bays and waters of all descriptions at any and all places within said city or adjoining the limits of said city as herein constituted, all and singular the property, estate, right, title and interest of the people of the state of New York, in, to, of, and concerning such lands and soil covered by water, as are embraced within the projected boundary lines of any street intersecting the shore line, and which street is in public use or which may be hereafter opened for public use, extending from high-water mark out into said streams, rivers, sounds, bays and waters so far (any limits in existing grants to the contrary) as the said city shall now or at any time hereafter in the opinion of its board of aldermen or department of docks and ferries require the same for ferries, public wharves, docks, piers, bulkheads, basins, slips, or other public structures, adjuncts and facilities for navigation and commerce, including the right for such purposes to reclaim such lands from said waters, and includ-

ing also all riparian rights, and all rents, issues and profits of the premises herein granted. The commissioners of the land office shall from time to time, convey or patent the lands herein granted to the city for said purposes as and whenever required by the board of docks."

It will be noted that this section, after declaring a general purpose for "needful provisions for the navigation, intercourse and commerce of the city," makes a specific grant to the city of New York of all lands under water then owned by the state in language as follows:

"To these ends, in addition to all other grants, there is hereby granted in fee to the said city of New York, as herein constituted, in all the public streams, rivers, sounds, bays and waters of all descriptions at any and all places within said city or adjoining the limits of said city as herein constituted, all and singular the property, estate, right, title and interest of the people of the state of New York, in, to, of, and concerning such lands and soil covered by water, as are embraced within the projected boundary lines of any street intersecting the shore line, and which street is in public use, or which may be hereafter opened for public use, extending from high-water mark out into said streams, rivers, sounds, bays and waters so far (any limits in existing grants to the contrary) as the said city shall now or at any time hereafter in the opinion of its board of aldermen or department of docks and ferries require the same for ferries, public wharves, docks, piers, bulkheads, basins, slips, or other public structures, adjuncts and facilities for navigation and commerce."

This section further provides as follows:

"The commissioners of the land office shall from time to time, convey or patent the lands herein granted to the city for said purposes as and whenever required by the board of docks."

Whether this section of the charter be considered as a completed grant, it certainly amounts to a permanent appropriation to the uses of the city of New York of all the lands under water described therein, and it was no longer within the power of the commissioners of the land office to make any grants in fee, or otherwise, inconsistent with the provisions of said section.

It is argued, however, that the section of the statute above quoted did not apply to Joralemon street, as that is said not to have intersected the shore line, nor to have extended from high-water mark, and that, therefore, its lines could not be "projected" out into the waters of the East River, in the meaning of the statute. This argument is of supreme importance, because the route of the subway as constructed lies largely within limits, between piers 17 and 18, which would form extensions of boundary lines of Joralemon street from the shore line out into the river. The argument is based upon a further contention that Joralemon street actually ends above high-water mark, or the shore line, and that the dock company owns two parcels of land intercepting its further progress to high-water mark. It is then argued that the lines of the street cannot be considered as "projected" into the water of the river, because such lines would pass through private property in order to reach high-water mark.

This interpretation of the statute seems too narrow. The statute applies by its express terms to "any street intersecting the shore line, and which street is in public use or which may be hereafter opened for public use." The "projected boundary lines" described by the

statute would therefore embrace the boundary lines of a street then laid out as intersecting the "shore line," although a portion of it had not been actually opened for public use, for, as it declares expressly, it has relation to such a street "which may be hereafter opened for public use." In any event, the commissioners found as a matter of fact that Joralemon street had been opened out to the bulkhead line established by law and that the fee of the dock company in that street was subject to street uses out to said bulkhead line. If so, then section 83 of the charter of the city of New York applied as the city became vested with a fee to the lands under water within the projected lines of that street out into the East River between piers 17 and 18. It was inconsistent, therefore, on the part of the commissioners to find that the dock company had title in fee to all lands beyond the bulkhead line, and to base its award of damages on such a theory.

[3] It is suggested that the construction of the subway was not such a purpose as would fall within the main purpose of whatever grant had been made to the city of New York by section 83 of its charter as aforesaid, which grant is declared to be made for the general purpose of "navigation, intercourse and commerce." The subway is devoted to the carriage of passengers between the boroughs of the city. The word "commerce" has been held to embrace the carriage of passengers for hire.

"That the transportation of passengers is a part of commerce is not now an open question." Passenger Cases, 7 How. 401, 12 L. Ed. 702; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23.

[4] If, however, the construction of the subway can be held to be not within the purposes of the grant made by section 83 of the charter, that objection is to be availed of only by the state, and is not open to the dock company, for the commissioners of the land office had no power to grant to it in fee what had already been granted to the city of New York in fee. The grant made in 1902 to the dock company must therefore be deemed to have excluded such lands under water in the slip between piers Nos. 17 and 18 as were included within the projected lines of Joralemon street from the bulkhead line outward. The city, however, could not use these lands for any purpose in such manner as to impair or damage the rights of the dock company as pier owners, or as grantees under the grant of 1902 so far as it elsewhere applies, and where such impairment and damage is shown compensation must be made, but it must be based upon a proper legal theory.

These views lead to a reversal of the order confirming the report of the commissioners. There is, however, no necessity of appointing new commissioners, in view of the great expenditure of time and money already had, and the matter should be referred back to the same commissioners for re-examination and a new report, with the suggestion that whatever awards may be made hereafter for temporary and permanent damages be stated separately.

Order reversed, with $10 costs and disbursements, and matter remitted to the commissioners. All concur.