Consumers Coal and Ice Company, Respondent, *v.* The City of New York and Others, Appellants.

Second Department, February 1, 1918.

Waters and watercourses — rights in land under New York bay — navigation within bulkhead line — right of owner to fill in land under water — privately owned land under public water subject to navigation and to the municipal law — authority of commissioner of docks to authorize construction of temporary structures at request of Federal government — injunction.

An owner of land under water extending into New York bay has the right to build a pier in front of its upland, but through its private ownership has no right to lateral waters over the land of adjacent proprietors.

Its private right of use is limited to the front of its shore or its extension into public waters. Whatever right it has to participate in public waters is subject to the vicissitudes of public regulation.

Navigation within the bulkhead line in New York bay may continue only to such time as the littoral owner avails itself of the right to fill in its land to the bulkhead line.

An owner of land under New York bay has no right to enjoin an owner of lateral waters from filling into the old bulkhead line, nor to enjoin the construction of basins therein for the harborage of vessels to meet the present national exigencies due to the war.

Section 819 of the Greater New York charter gives the commissioner of docks specific power to change pier head lines in specified places, but no

general authority is conferred upon him to change bulkhead lines, even temporarily.

With the approval of the sinking fund commission, the commissioner of docks can even change bulkhead lines, and where there has been accordingly concerted a plan that takes away from a littoral owner some 600 feet of the land that since 1857 could have been filled in by said owner or its predecessor, and the proposal is to confine the temporary structures within the old bulkhead to aid in meeting the nation's greatest exigency with all of the waters from the old bulkhead line unincumbered, a temporary injunction should not be granted in the absence of full proof of legal injury to a littoral owner.

Privately owned land under public waters is subject to the navigation of vessels over it, but cannot be appropriated by others to enlarge the berths at private piers.

Whether public waters are within bays or the three-mile limit on the open sea, they are subject to the municipal law within the exercised paramount right of Congress to regulate commerce, and the State, through the Legislature within such limitation may confer an exclusive privilege in tide waters or authorize a use inconsistent with the public right.

The commissioner of docks vested by the State with the control and government of waters under New York bay, being asked by the Federal government to provide a basin for the protection of neutral vessels, may authorize temporary structures within a limited area for such purpose, although the slip spaces previously given to an adjoining owner on either side of its pier by the sinking fund commission are thereby encroached upon, it appearing, however, that such owner will suffer no infringement of its private rights or property.

APPEAL by the defendants, The City of New York and others, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Richmond on the 10th day of January, 1918, granting an injunction *pendente lite.*

The plaintiff owns land under water, 100 feet wide, extending into New York bay from the foot of Medway street, and on it has a pier 40 feet in width, the northerly side of which is 10 feet from the northerly line of the land.

Measuring from the east line of Front street, plaintiff's pier extends about 1,500 feet into the bay, of which the outer 412 feet is beyond the bulkhead line fixed by the Secretary of War.

The Stapleton Dock and Warehouse Corporation owns adjoining lands under water north and south of plaintiff's

pier.  On January 21, 1916, the dock commissioner adopted a plan for improvement of this water front (which the commissioners of the sinking fund afterwards approved).   It established a bulkhead line only 500 feet east of the east line of Front street, from which were to project six piers, each 125 feet wide (with slips between, 275 feet in width), such piers to extend out to the United States pierhead line — a distance of about 1,300 feet.

The Stapleton Dock and Warehouse Corporation, however, had not done any filling, and had not erected any structure on this property.

In 1917 the United States authorities informed the commissioner of docks that they sought a location where a basin might be constructed to protect, against ice, neutral vessels and coal and other barges for such vessels.   The commissioner of docks accordingly requested the Stapleton Company to put up such necessary structures.   The Stapleton Company obtained from the defendant Henry Steers, Inc., an estimate for such a basin.   Henry Steers, Inc., applied to the commissioner of docks for a permit for the erection of this temporary basin, requesting its issue " for the duration of the war and at least one year thereafter.   They desire to proceed with this construction at once, to relieve the congestion now prevailing in the [New York] harbor."   The permit was granted on December nineteenth, of which the applicant was advised by letter on December twenty-first.   Such basin was to be formed by rows of piling with braces and supports forming mooring racks, to be placed and driven under the direction of the chief engineer of the department of docks. These lines of piling are to extend out to the bulkhead line fixed by the Secretary of War, and not that proposed by the dock commissioner's plan of 1916, and were to run along the boundaries ten feet from plaintiff's pier on one side and about thirty-five or forty feet on the other side.   All this basin or cage was to be inside this bulkhead line.

Upon plaintiff's application, the court at Special Term, on January 9, 1918, continued an injunction against this structure, which order was on the condition that the appeal by defendants be brought on for immediate hearing in this court.

*William E. C. Mayer* [*William P. Burr, Corporation Counsel, Terence Farley* and *Edwin J. Freedman* with him on the brief], for the appellant The City of New York.

*Albert B. Boardman,* for the appellants The Stapleton Dock and Warehouse Corporation and another.

*P. E. Callahan,* for the respondent.

Per Curiam:

The plaintiff asserts that it is entitled to have a clear water space of 100 feet on each side of its pier, and the defendants have been restrained from building a rack on such northerly side of plaintiff's land and a similar rack on the southerly side thereof " at a distance in violation of their line or water front as heretofore fixed by the Sinking Fund Commission of the said City of New York, on March 16th, 1916," which required the slips or basins to be 275 feet in width. The order is broader than the plaintiff's present contention that slips should be 100 feet wide. Indeed, plaintiff in its brief, as it did upon the argument, disavows any new rights under the plan of the sinking fund commission, and demands slips only 100 feet wide pursuant to the regulation provided by chapter 763 of the Laws of 1857 and section 2 of chapter 898 of the Laws of 1895. The latter act provides: " It shall be lawful for the owners of piers and bulkheads constructed or hereafter to be constructed, or the owners of land under water granted by the State of New York on the Staten Island side of the harbor of New York, to extend or construct piers not exceeding one hundred and fifty feet in width, with spaces between the same of at least one hundred feet, and bulkheads to the exterior bulkhead and pier lines respectively fixed and established by this act." The complaint shows that, as the plaintiff's pier was built before such act, it has done nothing pursuant to it. The Stapleton Company has not built any structure on its land. Plaintiff had the right to build a pier on the land in front of its upland (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74), but through its private ownership has no right to lateral waters over the land of adjacent proprietors. (*Jenks* v. *Miller,* 14 App. Div. 474.) Its private right of use is limited

to the front of its shore or its extension into public waters. Whatever right it has to participate in public waters is subject to the vicissitudes of public regulation. (*People* v. *New York & Staten Island F. Co.*, 68 N. Y. 72.) Nor do I understand that plaintiff contends otherwise, but rather that the act of 1895, entitled "An act to establish the pier and bulkhead lines around Staten Island," is valid so far as its title expresses its purpose, that is, to fix pier and bulkhead lines, and the width of the slips. Section 818 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1904, chap. 741), among other things, invests the commissioner of docks "with the exclusive government and regulation of all wharf property, wharves, piers, bulkheads and structures thereon, and waters adjacent thereto, and all the basins, slips and docks, with the land under water in" the city of New York, although not owned by the city; and it is added: "The commissioner of docks shall not have power to change the exterior line of piers and bulkheads, established by law, except by the adoption of a plan or plans for the improvement of the water front of The City of New York * * * by and with the approval of the commissioners of the sinking fund." It is such plan of the sinking fund commission of March 16, 1916, which among other things fixes slip spaces at the width of 275 feet that the Stapleton Company is forbidden to violate by this injunction order. But section 819 of the charter (as amd. by Laws of 1913, chap. 327) provides: "That said commissioner of docks may build, or rebuild, or license, or permit the building or rebuilding, of temporary wharf structures, and said commissioner may lease land covered with water belonging to The City of New York for the purpose thereof, such lease, or permit to continue and remain at the will and pleasure of said commissioner, or for a time not longer than until the wharves, piers, bulkheads, basins, docks, or slips to be built or constructed according to such plan or plans, shall in the judgment of said commissioner, require and need to be built or constructed." By the permit of December 19, 1917, the commissioner has permitted the Stapleton Company to build temporary wharf structures that are not inconsistent with the Laws of 1895, but do deviate from the plans of the commissioners of the sinking fund in that they would not leave

the space of 275 feet between piers. The proposed structures are wholly within the bulkhead as fixed by the Laws of 1895. Hence, even if they do interrupt navigation, the statute of 1895, if in force, would authorize it, for navigation within the bulkhead line may continue only to such time as the littoral owner avails himself of the right to fill in its land to the bulkhead line. If, then, the plaintiff gains nothing from the action of the sinking fund commission, the injunction must be dissolved, inasmuch as the plaintiff would have no cause of action to enjoin the Stapleton Company from filling in to the old bulkhead line, much less to enjoin the construction of basins therein for the harborage of vessels to meet the present national exigencies. But the court should not disregard the record, which shows that the sinking fund commission has changed the bulkhead line so that the proposed structures will extend beyond the new bulkhead line to the bulkhead line fixed in 1895. The question, then, is whether the commissioner of docks can authorize such temporary structures. We would not conclude that the commissioner of docks, without consent of the sinking fund commission, could change the bulkhead line as fixed by the plan. Section 819 of the charter gives him specific power to change pier head lines in specified places, but no general power to change even temporarily bulkhead lines is suggested. But with that line fixed, may he give permission to disregard the slip spaces 275 feet as prescribed? The intention is not to grant him the power to obliterate all water spaces between piers. That would be contrary to the history of legislation. It would result in the appropriation to private use of public waters. But the matter must be adjudged with some reference to the time and circumstances. Where, with the approval of the sinking fund commission, he can even change bulkhead lines, and there has been accordingly concerted a plan that takes away from a littoral owner some 600 feet of the land that since 1857 could have been filled in by the Stapleton Company or its predecessor, and the proposal is to confine the temporary structures within the old bulkhead to aid in meeting the nation's greatest exigency, with all of the waters from the old bulkhead line unincumbered, we would not grant a temporary injunction, in absence of full proof of

plaintiff's legal injury. (*Jenks* v. *Miller, supra.*) Plaintiff's pier will still project about 412 feet beyond the proposed basin, allowing for any necessary manœuvering of vessels to reach the front of its pier. It has not land enough on the north side to berth vessels without intruding on its neighbor's land, and on the south side has some 40 feet for that purpose. How, then, does the proposed structure injure facilities that are its own? Between the present plaintiff and the Stapleton Company it was adjudged on January 13, 1917, in *Williams* v. *Consumers Coal & Ice Co.*, that the present plaintiff was not entitled to use public waters over the land of the Stapleton Company for mooring vessels to the side of plaintiff's pier. The decision of Mr. Justice KELLY in that case accords with the correct rule that privately owned land under public waters is subject to the navigation of vessels over it, but cannot be appropriated by others to enlarge the berths at private piers. Whether public waters are within bays or the three-mile limit on the open sea, they are subject to the municipal law, within the exercised paramount right of Congress to regulate commerce, and the State through the Legislature within such limitation may " confer an exclusive privilege in tidewaters, or authorize a use inconsistent with the public right." (*People* v. *New York & Staten Island F. Co.*, 68 N. Y. 78.) The State has vested in the dock commissioner the control and government of the waters in question, and he, solicited by the Federal officials, has invited the Stapleton Company to use a portion of such waters to furnish a protected harbor for vessels, leaving plaintiff ample room to approach the front of its dock or even its sides for a distance of about 412 feet. The permission is what was the Stapleton Company's right until March, 1916, and fits into plans for the execution of greatest national purposes. Such appropriation of public waters is limited in area and duration, and the right of the commissioner of docks to permit it must be measured in some degree by such considerations and the extremity of the needs, not of the Stapleton Company, but the public itself, and we conceive that from it the plaintiff suffers no infringement of its private rights or property. The plaintiff is naturally ruled by anxiety lest what seems temporary should abide, but unless in the future the bulkhead line

should be restored, and it would be no injustice to do that, the courts can protect plaintiff under existing law. Indeed, should the commissioner of docks and the sinking fund commission bring out the bulkhead line to its position under the act of 1895, or otherwise modify it, the plaintiff would not have a semblance of just grievance.

The order should be reversed and the motion denied.

THOMAS, MILLS, PUTNAM and BLACKMAR, JJ., concurred; JENKS, P. J., not voting.

Order reversed, and motion denied.