In the Matter of the Application of the PUBLIC SERVICE COMMISSION FOR THE FIRST DISTRICT, on Behalf of the CITY OF NEW YORK, Respondent, to Acquire Land under Water at the Foot of Montague Street, Brooklyn.

NEW YORK DOCK COMPANY, Appellant; JOHN J. PIERREPONT et al., Respondents.

Condemnation proceedings — navigable streams — acquisition of land under navigable waters for municipal purposes — land so taken is subject to the public right of navigation in the waters over the land taken.

1. Title to land under a navigable river is not the same as the title to the shore land. In a navigable stream the public right is paramount, and the owner of the soil under the bed of such a stream can only use and enjoy it in so far as is consistent with the public right, which must be free and unobstructed. The title to the upland is absolute and paramount, while the title to the lands over which the navigable water flows is subordinate to the public right of navigation. (*West Chicago Street R. R. Co.* v. *People ex rel. City of Chicago*, 201 U. S. 506, followed.)

2. The city of New York brought this proceeding to acquire upland and land under water for the purposes of a street subway. The notice of application and the petition for the appointment of commissioners of appraisal state that the city is to acquire in fee " all that parcel of *land* and *land under water* " shown upon the maps and plans mentioned. The land under water to be taken is that of the owners of the upland extending to a pier line theretofore fixed. The appellants are owners of piers adjoining the property sought to be taken on either side. Under the provisions of chapter 763 of Laws of 1857 the sides of these piers must be kept open for navigation and for approach to the docks. Appellants claim compensation in this proceeding by reason of that fact. *Held*, that it is the fee of the land which is taken and this fee is still subject to the right of navigation existing in the state, which is in the nature of a right or privilege of the state which is expressly excluded from the property taken. No rights or privileges of the owners of docks or piers adjoining that taken have been interfered with and such adjoining owners have no right to compensation.

*Matter of Public Service Comm.*, 181 App. Div. 954, affirmed.

(Argued June 10, 1918; decided July 12, 1918.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 29, 1917, which affirmed an order of Special Term confirming the report of commissioners of appraisal in condemnation proceedings under the Rapid Transit Act.

*Charles E. Hotchkiss, Julien T. Davies* and *Andrew Macrery* for appellant. The New York Dock Company as owner of piers constructed in the navigable waters outside of an established bulkhead line within the city of New York under due authority of the state, with the right to collect wharfage and slippage has a right to use the navigable waters on the side of said piers for the purpose of mooring vessels alongside of said piers, and to make such piers commercially useful, even though the land under water alongside has been granted to another person for the purpose of commerce. (*Jenks* v. *Miller*, 14 App. Div. 474; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *Hecker* v. *N. Y. B. D. D. Co.*, 13 How. Pr. 551; *Matter of City of New York*, 168 N. Y. 134; *Matter of City of New York*, 216 N. Y. 67; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *The Davidson*, 122 Fed. Rep. 1006; *Hedges* v. *W. S. R. R. Co.*, 80 Hun, 310; *Matter of R. T. R. R. Comrs.*, 197 N. Y. 81; *Matter of City of New York*, 185 N. Y. 607; *Donohue* v. *Keystone Gas Co.*, 181 N. Y. 313.)

*William P. Burr, Corporation Counsel* (*Terence Farley, Charles J. Nehrbas* and *Louis C. White* of counsel), for city of New York, respondent. In view of the unanimous affirmance by the Appellate Division, this court is precluded from reviewing any question concerning the sufficiency of the evidence to sustain the findings of the commissioners. (*Matter of City of New York* [*East 36th Street*], 217 N. Y. 621; *Porter* v. *Municipal Gas Co.*, 220 N. Y. 152.)

*Edgar M. Cullen, William N. Dykman* and *Francis L. Archer* for John J. Pierrepont, respondent. The order confirming the report of the commissioners should be affirmed as a matter of course so far as relates to the award to the Pierreponts, without considering the question between the dock company and the city, on the ground that the appellant dock company is not aggrieved by the award to these respondents, and the city, which might have complained of that award, has not, nor has it appealed. (*Hooper* v. *Beecher,* 109 N. Y. 609; *Matter of R. T. Comm.,* 197 N. Y. 81; *Matter of City of New York,* 190 N. Y. 350; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439.) The appellant has no easement, interest or estate in the lands conveyed. (*American Ice Co.* v. *New York,* 217 N. Y. 402; *Matter of McClellan,* 146 App. Div. 594; 204 N. Y. 677; *Appleby* v. *City of New York,* 167 App. Div. 369; *Jenks* v. *Miller,* 14 App. Div. 474; *Consumers, etc.,* v. *City of N. Y.,* N. Y. L. J. Feb. 18, 1918; *Griffiths* v. *Morrison,* 106 N. Y. 165.)

CRANE, J. The majority of the court are of the opinion that the unanimous affirmance of the order confirming the report of the commissioners that the New York Dock Company failed to establish any title or rights in the property condemned precludes us from considering the claims urged by said company on this appeal. If, however, in view of the public interest involved we should assume without deciding that we are able to consider the same we should still think that the report was correct.

The city of New York, under authority of the Rapid Transit Act, brought this proceeding to acquire upland and land under water at the foot of Montague street, Brooklyn, for the purposes of the Whitehall street-East river-Montague street subway. The tunnel under the

river is forty-five feet below mean low water at the pier line. The commissioners awarded to Messrs. Pierrepont for the land and land under water out to the pier-head line of 1873, $184,942. The New York Dock Company appeared and claimed damage to its adjoining land and piers, but the commissioners reported that the company had failed to establish any property right in parcel No. 1, as laid down on the maps and described in the petition in this proceeding. Parcel No. 1 was the Pierrepont property for which the award above mentioned was made, including the additional land under water not owned by the Pierreponts extending out to the pier line of November 17, 1897.

That part of parcel No. 1 which was owned by the Pierreponts had been in use as the Wall street ferry for fifty-two years prior to July, 1912. It was then discontinued. The ferry house occupied the upland, and the ferry racks extended out into the water from the bulkhead line on the north and south sides of the property thus forming the ferry slip. The ferry had the exclusive use of the slip. On property conveyed to the New York Dock Company in 1895 there had been erected piers or docks designated in this proceeding as pier 14 and pier 15. Pier 14 adjoined the ferry slip, or the Pierreponts' property, upon the north, and pier 15 adjoined it on the south. These piers extended out to the pier line of June 10, 1873. Upon the discontinuance of the ferry, the ferry racks were removed, so that from July, 1912, up to the latter part of 1914 the New York Dock Company used the ferry slip in docking boats alongside of the piers.

The claim of the New York Dock Company arises out of the ownership and use of these docks known as piers 14 and 15. They are built entirely upon its own property. No portion of parcel No. 1, or the Pierreponts' property, is owned by the New York Dock Company.

Neither has the company any record or paper title giving it any lien or incumbrance upon or property. interest in parcel No. 1. Its sole claim to damage arises out of chapter 763 of the Laws of 1857, entitled " An act to establish bulkhead and pier lines for the port of New York." The material part reads as follows: " It shall not be lawful to fill in with earth, stone or other solid material in the waters of said port, beyond the bulkhead line or line of solid filling hereby established, nor shall it be lawful to erect any structure exterior to the said bulkhead line, except the sea wall mentioned in the first section of this act, and piers which shall not exceed seventy feet in width respectively, with intervening water spaces of at least one hundred feet, nor shall it be lawful to extend such pier or piers beyond the exterior or pier line, nor beyond, or outside of the said sea wall."

It is conceded by the Pierreponts that with this law in effect they cannot build any pier extending out from their bulkhead line upon their land under water. Under this harbor regulation the south side of pier 14 and the north side of pier 15 must be kept open for navigation and for approach to the docks for the purposes of wharfage. By section 859 of the New York charter, wharfage and dockage can be collected by the New York Dock Company at the rates therein fixed.

The New York Dock Company, therefore, has two piers running out into the navigable water so situated that no other dock can be built within one hundred feet of them. No permanent obstruction can interfere with its use of these docks for the mooring of its vessels and for the collection of wharfage. If the city in this proceeding has undertaken to interfere with these rights and has taken not only the land under water belonging to the Pierreponts but the use of the water itself and has acquired the right to build upon the land under water and close up the ferry slip, thus interfering with or

preventing navigation alongside of pier 14 and pier 15, it may be that the New York Dock Company would be entitled to compensation. Although by the repeal of chapter 763 of the Laws of 1857, the state could remove all basis for this claim, yet so long as this statute remains upon the books and the water must be kept clear for a hundred feet from the piers, the dock company may have such rights as require compensation if taken away for public purposes. (*First Construction Company of Brooklyn* v. *State of New York*, 221 N. Y. 295; *Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *Matter of McClellan*, 146 App. Div. 594.)

We are not now called upon to decide whether such rights could be taken by the city in condemnation proceedings, or whether, if taken and navigation alongside the piers closed, the dock company would be entitled to damage. The questions are not before us, as the city by these proceedings has not attempted to interfere with navigation to the docks or with the waters of the ferry slip. The notice of application to acquire property, given by the corporation counsel of the city of New York, stated, " The city of New York is to acquire in fee, free from all liens and incumbrances, all that parcel of *land* and *land under water*, with the buildings and improvements thereon, shown upon the maps and plans hereinafter mentioned," and after describing parcel No. 1 continues, " together with all and singular the appurtenances thereof or in any wise appertaining thereto and any and all rights of wharfage, cranage, advantages or emoluments, if any, growing or accruing by or from said premises or any part thereof, excepting and excluding therefrom, however, any and all estate or estates, rights, terms, privileges, franchises or easements now owned by the city of New York or the State of New York in or to said premises or any part thereof." The petition

of the public service commission for the appointment of commissioners of appraisal and the memorandum annexed thereto contain the same description. Nothing is stated about interference with navigation in the waters over the land in question or with the closing of the slip. The part condemned by the city is the upland and the land under water as mapped out and all the appurtenances, rights and privileges pertaining thereto. It is the fee of the land which is taken, and this fee is still subject to the right of navigation existing in the state. The right of navigation in the navigable waters over the land in question is in the nature of a right or privilege of the state of New York which is expressly excluded from the property taken. We know as a fact that the waters are not to be interfered with as the permit issued by the secretary of war on September 20, 1913, authorizes the construction of a tunnel under the river at a depth of not less than forty-five feet below mean low water datum at bulkhead line on either side of the river and about sixty feet in the middle of the river.

In *West Chicago Street R. R. Co.* v. *People ex rel. City of Chicago* (201 U. S. 506), a street railroad company had been granted permission by a municipal ordinance to construct a tunnel under a navigable stream. After construction, it was ordered to either remove the tunnel or lower it to conform with the necessities of commerce and to facilitate navigation, and it was held that the action of the city was not unconstitutional. Mr. Justice HARLAN in the opinion says: " Great stress is placed by the railroad company on the fact that it is the owner in fee of the bed of the river at the point where the tunnel was constructed. But that fact is not vital in the present discussion; for it was adjudged by the state court — in harmony with settled doctrines, as will presently appear — that ' title to land under a navigable river is not the same as the

title to the shore land;' that 'in a navigable stream the public right is paramount, and the owner of the soil under the bed of such a stream can only use and enjoy it in so far as is consistent with the public right, which must be free and unobstructed;' that 'the title to the upland is absolute and paramount, while the title to the lands over which the navigable water flows is subordinate to the public right of navigation;' and that 'the city could not, if it would, grant the right to obstruct the navigation of the river, or bind itself to permit anything which has become an obstruction to be continued.' * * *

"In addition to these considerations we may suggest the important one that the rights of the company, as the owner of the fee of land on either side of the river or in its bed, were subject to the paramount right of navigation over the waters of the river."   (P. 520.)

It may be possible to read the description in the petition in this proceeding so as to include these privileges of wharfage claimed by the dock company, but it would require a strained construction.   Where the city intends to condemn not only the land under water but to close navigation over it, the intention should be clearly stated.

We conclude, therefore, that the city took the land and land under water in parcel No. 1, owned by the Pierreponts in fee simple free and clear of all incumbrances, but that this fee ownership was nevertheless subject to the rights of navigation in the water over the land.   Consequently, no rights or privileges of the New York Dock Company pertaining to piers 14 and 15 have been interfered with.

Some mention was made upon the argument and in the briefs that the New York Dock Company should be compensated at least for the three and one-half years of user by the city of the slip and waters in question while constructing the tunnels.   A stipulation was executed permitting the city to enter into immediate posses-

sion, leaving the question of compensation to be fixed later.    There is no evidence in the record of the nature of this possession by the city or of the damages sustained thereby.    Possibly the dock company may recover in some other action or proceeding upon this agreement for the compensation reserved.

The amount awarded by the commissioners to the Pierreponts for their land taken was within about $2,000 of the estimate made by the city experts.    They assumed in arriving at the amount that the dock company could exercise the rights of navigation in and over the waters as above stated.    The city has not appealed from this award, and the dock company can claim no part of it; in fact, it makes no such claim, the hearings having proceeded upon the theory that the amounts to be awarded to the Pierreponts and to the dock company, if any, should be independent of each other.

The order appealed from should be affirmed, with costs.

Hiscock, Ch. J., Collin, Hogan, Cardozo, Pound and Andrews, JJ., concur.

Order affirmed.