EDGAR S. APPLEBY and JOHN S. APPLEBY, Individually and as Executors, etc., of CHARLES E. APPLEBY, Deceased, Appellants, Respondents, *v.* THE CITY OF NEW YORK and WEEHAWKEN STOCK YARD COMPANY, Respondents, Appellants, Impleaded with EBEN E. OLCOTT and Others, Defendants.

First Department, January 20, 1922.

Waters and watercourses — grants of land under water in Hudson river by city of New York — effect of clause reserving land indicated as streets on map — beneficial grants as distinguished from grants for purpose of promoting commerce — grantees acquired right to fill in between street lines, subject to Federal control — immaterial that streets had never been constructed — approval of bulkhead line by Secretary of War fixed outside limit of all bulkhead construction by grantees and their successors — city had right to erect piers on land indicated as streets on map and have full use of same but had no right to build projections over land of grantees beyond bulkhead line — full authority in city to dredge slips between piers to bulkhead line — navigation — owner of piers in common with owner of bulkhead has right to reasonable use of navigable waters between piers and adjacent thereto.

Grants to the plaintiffs' predecessors in title from the city of New York to land under water in the Hudson river in consideration of a sum of money and of covenants to make the streets, wharves and bulkheads whenever requested so to do by the city, and to keep the streets in good repair and to pay taxes on the premises, which contained the following clause: " Saving and reserving from and out of the hereby granted premises so much thereof as by said map annexed forms parts or portions of * * * avenues and * * * streets for the uses and purposes of public streets, avenues and highways as hereinafter mentioned," but without further reservations or restrictions, left the fee to the portions of the streets and avenues specified in the city, passing to the grantees the fee to the remainder of the premises.

Such grants are beneficial grants as· distinguished from grants expressly made for the purpose of promoting commerce; and, subject only to the control of the United States over navigable waters, the grantees acquired the right to fill in the premises between the street and avenue lines and the State and city thereby lost all right to claim that any of the waters within the lines of the premises were navigable; hence, chapter 763 of the Laws of 1857, establishing a bulkhead line inside the exterior line of the premises, could not become effective as against said grants and without compensation to the owners.

The rights of the plaintiffs are not affected by the fact that they or their predecessors have never been requested by the city to construct the

streets, wharves and bulkheads mentioned in the grants and that they have never constructed them.

The approval by the Secretary of War in 1890 of a bulkhead line, although inside the exterior line of the plaintiffs' premises, established the westerly limit for bulkhead construction.

The plaintiffs have no right to erect piers extending beyond the bulkhead line over their land, but they have the right to erect bulkheads and wharves on the bulkhead line established by the Secretary of War and to exercise all their rights under the grants.

The city was within its rights when it erected piers within the lines of the streets extended, leased the same, allowed vessels to be moored thereto and did not account to the plaintiffs for any rent.

A mandatory injunction compelling the city to remove the obstructions inside the bulkhead line on the surface of what are now piers is not now necessary, but the projections from the side of the pier over the plaintiffs' land outside the bulkhead line constitute a technical trespass and the trial court was right in requiring their removal.

The plaintiffs are not entitled to a mandatory injunction requiring the city to remove the sheds and other structures erected on the pier.

The city should not be enjoined from dredging the slips between the piers to the bulkhead line approved by the Secretary of War, for the State, subject to Federal laws, has authority to regulate navigable waters within its jurisdiction and has delegated its authority in respect to land under water in slips to the commissioner of docks.

*It seems*, that where, as here, the owner of piers enjoys a monopoly in the sense that no other pier and no obstruction may be placed beyond the bulkhead line between the piers or adjacent thereto, the owner of the piers, in common with the owner of the bulkhead at the inner ends thereof, has a right to the reasonable use of the navigable waters between the piers or adjacent thereto for all purposes of navigation, including the right to moor vessels alongside the piers, subject, however, to regulation by the dockmasters.

CROSS-APPEALS by the plaintiffs, Edgar S. Appleby and another, and by the defendants, The City of New York and another, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on or about the 25th day of July, 1917, upon the decision of the court rendered after a trial at the New York Special Term.

*Banton Moore* [*Spotswood D. Bowers* of counsel], for the plaintiffs.

*John P. O'Brien, Corporation Counsel* [*Charles J. Nehrbas* of counsel], for the defendant The City of New York.

*Stetson, Jennings & Russell*, for the defendant Weehawken Stock Yard Company.

LAUGHLIN, J.:

This is a suit in equity for injunctive relief, commenced September 15, 1914, and it is predicated on two grants by the city of land under water, to the ownership of which plaintiffs have succeeded. The first of the grants was made to one Latou on the 24th of December, 1832, in consideration of the payment by him to the city of the sum of $7,937.50, and of covenants on his part to make the streets, wharves and bulkheads whenever requested to do so by the city, and to keep the streets in good repair and to pay taxes on the premises. The premises were therein described as follows: " All that certain water lot or vacant ground and soil under water to be made land and gained out of the Hudson or North River or harbour of New York and bounded, described and containing as follows:

" That is to say Beginning at the point of intersection of the line of original high water mark with the line of the centre of [West] Fortieth Street and thence running westerly along said centre line of [West] Fortieth Street one thousand one hundred and twenty-six feet eleven inches to the westerly line or side of the Thirteenth Avenue, said westerly side of the Thirteenth Avenue being the permanent exterior line of said City as established by law thence northerly along the westerly line or side of the Thirteenth Avenue two hundred and fifty eight feet four and a half inches to the line of the centre of [West] Forty-first Street thence easterly along said centre line of [West] Forty-first street one thousand three hundred and thirty-eight feet eleven inches to the line of the original high water mark and thence in a southwesterly direction along said line of original high water mark as it runs to the point or place of beginning

" As particularly described, designated & shown on a map hereto annexed dated New York December 1852 made by John I. Serrell City Surveyor and to which reference may be had said map being considered a part of this indenture the premises conveyed being colored pink on said map

" Be the said dimensions more or less Saving and reserving from and out of the hereby granted premises so much thereof as by said map annexed forms parts or portions of the Twelfth and Thirteenth avenues and Fortieth and Forty first streets

for the uses and purposes of public streets avenues and highways as hereinafter mentioned."

The second grant was made to the father of the plaintiffs on the 1st of August, 1853, in consideration of the payment by him to the city of the sum of $6,369.37, and like covenants on his part with respect to constructing the streets, wharves and bulkheads and keeping the streets in repair. By a precisely like description, it granted the premises between the original high-water mark and the westerly line of Thirteenth avenue and the center lines of West Thirty-ninth and West Fortieth streets.

The first point of law to be decided arises on the contention of the plaintiffs that by these grants the fee simple absolute passed to the grantees, subject only to an easement reserved to the public for the streets and avenues. It is contended in behalf of the city that the fee to the streets and avenues was excepted from the grants, and it has been so held in a number of cases, in some of which the grants construed were in the precise phraseology of these grants, and in others the phraseology was somewhat different. (*Whitman* v. *City of New York*, 85 App. Div. 468; *Consolidated Ice Co.* v. *Mayor, etc.*, 166 N. Y. 92; *Langdon* v. *Mayor, etc.*, 93 id. 129, 138; *Mayor, etc.*, v. *Law*, 125 id. 380; *Matter of Commissioner of Public Works*, 135 App. Div. 561; affd., 199 N. Y. 531.) It must, therefore, be held that the premises within the lines of the streets and avenues were excepted from the grants and remained in the city pursuant to the grants from the State to it under the Dongan Charter of 1686, the Montgomery Charter of 1730, and by chapter 58 of the Laws of 1826, chapter 182 of the Laws of 1837, and chapter 115 of the Laws of 1807, and that the grants from the city passed the fee to the remainder of the premises. It is well settled that these were beneficial grants as distinguished from grants expressly made for the purpose of promoting commerce; and so far as the State and the city were concerned and subject only to the control of the United States over navigable waters, the grantees from the city acquired an absolute right to fill in the premises granted between the street and avenue lines, but not to make the streets, avenues, bulkheads and wharves until called upon by the city so to do, or until the city approved

plans therefor, and thenceforth any and all rights of the State or the city to claim that any of the waters within the lines of the premises so granted were navigable were abandoned (*Duryea* v. *Mayor*, 62 N. Y. 592; *Mayor, etc.,* v. *Law*, 125 id. 380; *Whitman* v. *City of New York, supra; Matter of Mayor, etc.*, 193 N. Y. 503; *Hastings* v. *City of New York*, 39 Misc. Rep. 728. See, also, *Consumers Coal & Ice Co.* v. *City of New York*, 181 App. Div. 388; *People* v. *New York & S. I. F. Co.*, 68 N. Y. 71; *Matter of Public Service Commission [Montague St.]*, 224 id. 211; *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.*, 198 App. Div. 376; *Matter of McClellan*, 146 id. 594; affd., on opinion of App. Div., 204 N. Y. 677), in so far as they appear to be in conflict with the views I have stated, are distinguishable on the ground that the grants there under consideration were expressly made to promote commerce, and, therefore, were not intended as an abandonment of the navigability of the water. In *Knickerbocker Ice Co.* v. *42d St. R. R. Co.* (176 N. Y. 408) and *Matter of Long Sault Development Co.* (212 id. 8) and *People* v. *Delaware & Hudson Co.* (213 id. 194) there are expressions to the effect that the State holds such property on a public trust, and that its grantees do not take an unqualified fee; but those decisions are not inconsistent, I think, with the right of the State to grant a fee for a valuable consideration to a riparian owner of land under water at the edge of a navigable stream not deemed necessary for navigation. The high-water line in this locality passed between Eleventh and Twelfth avenues, nearer Eleventh than Twelfth. The first bulkhead line was established in the vicinity by chapter 763 of the Laws of 1857, 100 feet westerly of the westerly side of Twelfth avenue, by the confirmation of the harbor commissioner's map so showing it. That map shows West Forty-first street as ending at Twelfth avenue, and an existing bulkhead a little to the east of the easterly line of Twelfth avenue, and a pier extending from West Fortieth street westerly across Twelfth avenue and another extending from West Thirty-ninth street westerly beyond the bulkhead line thereby established. It does not appear when these piers were built or by whom, other than may be inferred from a resolution adopted by the board of aldermen on the 3d of June, 1850, granting certain water rights to one Cobb on condition that he build a pier at the foot of West

Thirty-ninth street under the street commissioner's direction within one year, and another resolution directing the street commissioner to build a pier 100 feet in length at the foot of West Fortieth street, to be used in the removal of offal. If I am correct in the views already expressed, said act of 1857, establishing a bulkhead line inside the exterior line of Thirteenth avenue, could not become effective as against said grants without compensation to the owners thereof.

Plaintiffs alleged, and the city admitted, that neither the " plaintiffs nor their testator and predecessor in title, Charles E. Appleby, have ever been required to build or erect said streets, wharves or bulkheads forming part or portions or whole of Twelfth and Thirteenth Avenues, [West] Thirty-ninth and [West] Fortieth Streets." There is a like allegation and admission with respect to the other grant. The grants obligated the grantees at their own costs and expenses to make the streets and avenues and bulkheads, and thereafter to keep and maintain them in repair when required so to do by the city; but it would seem from these allegations and admissions that they were never required to make any of the streets, avenues or bulkheads, and there is no evidence that they did. It is to be inferred from the harbor commissioner's map, which was confirmed by the act of 1857, that the streets in question had been made to the easterly line of Twelfth avenue, and that the premises granted between West Thirty-ninth and West Fortieth streets, and West Fortieth and West Forty-first streets had been filled in from the line of high water to the easterly line of Twelfth avenue, but it does not appear by whom that was done. The bulkhead or wharf was so shown to have been constructed along the easterly line of Twelfth avenue prior to 1857. There is no evidence other than may be inferred from some photographs and maps showing coal bins on the wharf and photographs showing coal barges in the slips, that any use has been made by the plaintiffs of these bulkheads; but they are not the bulkheads referred to in the grants, which were to be on the exterior line of Thirteenth avenue. By section 99 of chapter 137 of the Laws of 1870, as amended by section 6 of chapter 574 of the Laws of 1871, the department of docks was created, and the board of the department of docks was directed to cause a plan for the development of the water front of the city to be prepared,

and was authorized to purchase or obtain by condemnation wharf property. They adopted a proposed plan for a new bulkhead line westerly of the easterly line of Twelfth avenue, which should be 50 feet west of the bulkhead line of 1857, and a pierhead line 500 feet westerly of the bulkhead line, and indicated thereon where piers might be built. That plan was accepted by the sinking fund commissioners pursuant to the provision of said statutes, and thereby became effective. That plan provided for piers 80 feet wide extending westerly from the foot of each street in question to the pierhead line. It has duly amended in 1884, reducing the width of the piers to the width of the streets. The Secretary of War approved that bulkhead line in 1890, and in 1897 he approved a pierhead line 700 feet westerly of the bulkhead line. In 1887 the pier at the foot of West Fortieth street was extended by the construction of a wooden pier extending 500 feet beyond the bulkhead line, and that was extended 200 feet further in 1912 to the new pierhead line. The pier at the foot of West Thirty-ninth street was removed in 1896 and a new pier was constructed from the foot of West Thirty-ninth street to the new pierhead line, 700 feet beyond the bulkhead line. The first and only pier at the foot of West Forty-first street was built in 1904 from said unofficial bulkhead line at the easterly line of Twelfth avenue to said pierhead line established by the Secretary of War. All of these piers are within the lines of the streets continued, and of the precise width of the streets, and they were constructed by the city without the consent of the plaintiffs or their predecessors in title, and against their protest. The record shows that, commencing with the year 1903, the city leased parts of those piers and has received rentals therefor and has permitted the tenants to erect sheds and platforms thereon. It appears that one of these was a dressed meat company, another a stock yard company, another a railroad, another a coal company, and another a manure transportation company. It was stipulated that in 1884, prior to any dredging by the city, the depth of the water at the bulkhead, as constructed along the easterly line of Twelfth avenue, was three or four feet, and that by dredging, the city, prior to 1916, increased the average depth of the water to twenty feet to a line fifty

feet west of the westerly line of Twelfth avenue. It was conceded that, in connection with the business of the city's tenants on the piers, vessels came alongside the piers and were moored thereto, and that the city has not accounted to the plaintiffs for any of the rents so received. The city, by the adoption of a resolution by the department of docks June 11, 1891, instituted a proceeding to acquire title and possession from the plaintiffs of the premises between the streets and avenues granted to the plaintiffs' predecessor in title, but there was no resolution vesting title thereto in the city. Two of the commissioners died. The city only was authorized to apply to fill the vacancies, and it having failed so to do, plaintiffs on July 30, 1914, moved for a mandamus to compel the city so to apply. The hearing of the motion was postponed, and thereupon a resolution was adopted discontinuing the proceeding, and the motion was withdrawn without prejudice. Plaintiffs, evidently on the theory that it is inequitable to tax them for the premises and not give them the full use thereof, showed that in 1912 the city brought two actions for the foreclosure of tax liens on these respective parcels bounded by the streets and avenues, and that they were compelled to pay a large amount of taxes after the validity thereof was sustained by the Court of Appeals.

After the trial of the issues herein, but before the decision thereof, the commissioner of docks proposed a plan amending the plan for water front improvements between West Thirty-eighth and West Forty-second streets by moving the bulkhead line inshore 100 feet, which places it 50 feet west of the westerly line of Twelfth avenue, and this amendatory plan was approved by the sinking fund commissioners on the 14th of June, 1916. On the 13th of July, 1917, the judgment was entered herein pursuant to the decision, enjoining the city from further excavating, dredging or removing the soil of the plaintiffs' premises between the piers, and requiring it to take down and remove an overhanging dumping board or platform erected on the northerly side of the pier in West Thirty-ninth street, and awarding costs of the action to the plaintiffs. Plaintiffs' demands for judgment, which were not granted, were that the defendants be enjoined and restrained from mooring, docking and floating boats over their said premises, and from exercising,

claiming or asserting any easement, right, title or interest in, over or upon said premises for floating, mooring or docking boats, and from interfering in any manner with the use and enjoyment of said premises by the plaintiffs, their lessees and assigns, or in any manner using said premises, slips or basins, and that the city be required to take down and remove all pierheads, fences and structures in said street between Twelfth and Thirteenth avenues, which interfere with the free and unrestricted use of the street as a public highway, or which impair the right of the plaintiffs to fill in and make such streets when permitted or required, or which interfere with their easements of light and air and access in said streets, and prevent them from filling in their premises between said streets. On conflicting evidence with respect to whether plaintiffs were damaged by the dredging done by the city, the court found that they only sustained nominal damages, but the judgment contains no reference thereto.

On an appeal by the plaintiffs from an order denying their motion for a temporary injunction, this court held that the right of the plaintiffs to fill in the navigable water of the Hudson river was limited by the bulkhead line of 1871 (*Appleby* v. *City of New York*, 167 App. Div. 369.)  We did not then have before us the question as to whether it was competent for the municipal authorities to change the bulkhead line by moving it farther inshore as they did in 1916.  Appellants contend that their rights remain unaffected by that change in the bulkhead line, and that they are at liberty to construct a wharf on the bulkhead line of 1871 and to fill in their land behind it.  Counsel for the city concedes that, if they had so constructed bulkheads and wharves and filled in their land, their rights could not thereafter be affected by a change in the bulkhead line without just compensation, but it is contended in behalf of the city that, when the appellants come to exercise those rights, they must conform to any change lawfully made in the bulkhead line.  The learned counsel for the city contends that the grants were made subject to the establishment of bulkhead and pierhead lines, as might be necessary in the development of harbor improvements and in the interests of commerce, and that the commissioner of docks was authorized, with the approval of the sinking fund com-

missioners, to amend the plan for harbor improvement by thus changing the bulkhead line, so long as the right to fill to the old bulkhead line had not been exercised, and the water remained navigable, and cites authorities in support of that claim. (See *People* v. *New York & S. I. F. Co., supra; Consumers Coal & Ice Co.* v. *City of New York, supra; American Ice Co.* v. *City of New York,* 217 N. Y. 402; *West Chicago R. R.* v. *Chicago,* 201 U. S. 506; *Matter of Public Service Commission* [*Montague St.*], *supra; Sage* v. *Mayor,* 154 N. Y. 61; *White* v. *Nassau Trust Co.,* 168 id. 149, 157.) In *Matter of Public Service Commission* (*supra*), where the city condemned the fee to land under water between piers, it was held that the pier owners were not entitled to compensation for the reason that the city would take the fee subject to the right of navigation existing in the State, and that, therefore, no rights of the pier owners with respect to the use of their piers would be affected; but there and in *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.* (*supra*) and in *Matter of McClellan* (146 App. Div. 594; affd., 204 N. Y. 677), as has been seen, the grants were not the same as those now before the court. In none of the cases cited was this point decided. Some of the opinions seem to imply that until the grantee exercises his rights, they are subject to public regulation, but it has not been so held as intimated, where, as here, the city has conveyed a fee for a substantial consideration.

The approval by the Secretary of War of the bulkhead line of 1871 precluded the State or any agency of the State from establishing a bulkhead line further out, and required that the water outside that line should be open to navigation and free from any obstruction save piers with open slips between for mooring vessels and handling commerce, but did not preclude the State or city from setting the bulkhead line further inshore, which would enlarge the navigable water. (*Montgomery* v. *Portland,* 190 U. S. 89; *Cummings* v. *Chicago,* 188 id. 410.)

Appellants further contend that they have a right to erect piers from the bulkhead over their land to the pierhead line between the piers on the lines of the streets; but that contention is plainly unsound, for chapter 763 of the Laws of 1857, section 99, subdivision 3, of chapter 137 of the Laws of 1870, as amended by section 6 of chapter 574 of the Laws of 1871, and section

819 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1913, chap. 327) forbid any construction in navigable water beyond the bulkhead line, excepting piers authorized under the statute or the plan adopted under the statute, and the Federal authorities merely located the bulkhead and pierhead lines, and left it to the State to regulate the dimensions and location of piers. (*People* v. *New York & S. I. F. Co., supra; Consumers Coal & Ice Co.* v. *City of New York, supra; Matter of Public Service Commission, supra,* 216.)

The grants, however, gave the grantees the right to construct bulkheads on the water front of the lands granted, and to collect wharfage and cranage in perpetuity, and of those rights they cannot be deprived without compensation, and, therefore, they have the right to erect a bulkhead and wharf on the new bulkhead line so established by the Secretary of War, since that is the furthest west that such bulkhead may lawfully be constructed, and to exercise their rights with respect thereto. (*Langdon* v. *Mayor, etc., supra; Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Matter of Commissioner of Public Works,* 135 App. Div. 561; affd., 199 N. Y. 531.) The grants expressly reserved to the city the right to wharfage and cranage at the ends of the streets. Since, however, the fee to the streets was reserved to the city, and it owned the fee under water to the westerly thereof, it was under no obligation to the grantee to construct bulkheads or wharves at the foot of the streets, and was within its rights in erecting the piers on its own property and in erecting sheds and other structures thereon. (Greater N. Y. Charter, § 821, as amd. by Laws of 1913, chap. 411; Id. § 821a, as added by Laws of 1913, chap. 411; Id. § 844; *Williams* v. *Mayor, etc., supra; Sage* v. *Mayor,* 154 N. Y. 61.) Plaintiffs, with respect to their land, may have a right of lateral access to and from the streets, which will give them a right of access inside the bulkhead line to and from what are now piers, when the bulkhead is constructed, on the theory that what are now piers will then become to that point streets; but they have no easement or right of access in connection with their lands to or from the ends of the streets as they existed when the grants were made, or to and from the ends or sides of the piers as now constructed beyond the bulkhead line. When the plaintiffs construct a

bulkhead and wharf on the authorized bulkhead line, and fill in their land behind it, the city will doubtless remove the obstruction on the surface of what are now piers inside the bulkhead line; and if it should not, plaintiffs may have a remedy by mandamus to compel the removal thereof. A mandatory injunction therefor now has not been shown to be necessary.

The projections from the side of the pier over the plaintiffs' lands, which the city has been required to remove, are outside the lawful bulkhead line approved by the Secretary of War, and it has not been shown that they interfered with any use the plaintiffs now desire to make of their bulkhead rights, but they constitute a technical trespass and might ripen into a prescriptive right, and if in the future they should interfere with the plaintiffs' wharfage and cranage rights, a prescriptive right to maintain them might be asserted by the city. Therefore, I think the trial court was right in requiring their removal.

I am also of opinion that the court correctly decided that the plaintiffs were not entitled to a mandatory injunction requiring the city to remove the sheds and other structures erected on the pier. So far as plaintiffs are concerned, the city, I think, has the right to build and shed the piers in any manner it sees fit on its own land beyond the bulkhead line and within the pierhead line. (Greater N. Y. Charter, § 821, as amd. by Laws of 1913, chap. 411; Id. § 821a, as added by Laws of 1913, chap. 411; Id. § 844; *Williams* v. *Mayor, etc.*, 105 N, Y. 419.)

I think, however, that the city should not be enjoined from dredging the slips between the piers to the new bulkhead line, so approved by the Secretary of War. Since plaintiffs have no right permanently to obstruct the navigable waters in the slips beyond the bulkhead line, they cannot be damaged or prejudiced by the city's dredging and removing earth therefrom in order to deepen the water for the purposes of navigation. It has not been shown that such dredging in any manner interferes with any use the plaintiffs desire to make of their bulkhead, wharfage and cranage rights. If, therefore, such dredging technically constituted a trespass, there is no propriety in granting an injunction to restrain it, and the plaintiffs should be left to enforce their rights, if any, at law. I am of

opinion, however, that it does not constitute a trespass.    It is well settled that the Federal government has a right to dredge navigable waters, and that the owner of the fee to the land under such waters holds his title subject to the exercise of such right, and it was so held where such dredging destroyed valuable oyster beds lawfully planted by the owner of the fee. (*Lewis Blue Point . Oyster C. Co.* v. *Briggs,* 198 N. Y. 287; affd., 229 U. S. 82.)    The state, subject to Federal laws, has authority to regulate navigable waters within its jurisdiction in the interests of commerce, and to maintain them as efficient highways, and to remove obstructions therefrom, and to dredge the same where necessary (*Matter of Public Service Commission, supra; Matter of McClellan, supra,* 598), and the Legislature, by section 832 of the Greater New York charter, has delegated its authority in this regard, so far as the land under public waters in slips is concerned, to the commissioner of docks. I am, therefore, of opinion that the commissioner has a lawful right to dredge or cause to be dredged these slips between the piers to the bulkhead line.

It has been held in some cases that an owner of upland who owns the land under the water in front of his upland, and who constructs a pier over the land under the water, obtains no right, as against the owner of the land under water adjacent to the pier, to use those waters for the purposes of mooring vessels at the sides of the pier.    (*Consumers Coal & Ice Co.* v. *City of New York, supra; Jenks* v. *Miller,* 14 App. Div. 474; *Union Ferry Co.* v. *Fairchild,* 191 id. 639.)    Where, as here, the owner of the piers enjoys a monopoly in the sense that no other pier and no obstruction may be placed beyond the bulkhead line between the piers or adjacent thereto, the rule, I think, is different, and the owner of the piers, in common with the owner of the bulkhead at the inner ends thereof, has a right to the reasonable use of the navigable waters between the piers or adjacent thereto for all purposes of navigation, including the right to moor vessels alongside the piers; but the exercise of their respective rights is subject to regulation by the dockmasters.    (Greater N. Y. Charter, § 867; *Matter of McClellan, supra; Matter of Public Service Commission, supra.* See, also, *Consumers Coal & Ice Co.* v. *City of New York, supra.*)

The plaintiffs failed to show by satisfactory evidence any

substantial damages from the invasion of their rights by dredging easterly of the bulkhead line established by the Secretary of War or the use by the city of the water over their lands easterly of said line.

It follows that the judgment should be modified by eliminating the provisions thereof enjoining the dredging of the slips westerly of the bulkhead line established by the Secretary of War, and as so modified affirmed, without costs.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment modified as directed in opinion, and as so modified affirmed, without costs. Settle order on notice.