UNION FERRY COMPANY OF NEW YORK AND BROOKLYN, Appellant, Respondent, *v.* JULIAN P. FAIRCHILD and Others, as Permanent Receivers of ATLANTIC DOCK COMPANY, Respondents, Appellants.

First Department, April 30, 1920.

**Pleadings — demurrer to answer — equity — suit to obtain cancellation of alleged fraudulent lease of ferry privileges and to enjoin pending actions — complaint not stating cause in equity — when plaintiff's rights may be determined in pending actions.**

A demurrer of the plaintiff to the answer requires an examination of the complaint to determine whether the allegations therein are sufficient to constitute a cause of action.

The plaintiff sues to recover moneys paid by it and its predecessor in title to a dock company in the hands of permanent receivers, said moneys having been paid for a long period of time upon the theory that they represented rent lawfully collectible by the defendant and its predecessors for the use of an easement in the waters adjoining a pier and bulkhead owned by the defendant, and which were part of the plaintiff's ferry slip adjoining. It appeared that the original lease was negotiated by a person who had control of the affairs and management of the predecessors of both the plaintiff and defendant, and that on the expiration of the lease it had never been renewed or exchanged by any writing, although plaintiff continued to pay rent. It is alleged that the defendant has no title to said waters or easement therein, and that payments made by the defendant as rent were made inadvertently and without any obligation to make the same, and without consideration. The plaintiff sets out that it has no adequate remedy at law and demands that the lease or renewals thereof be adjudged void and that the defendant be declared to have no right, title or interest in said ferry slip or the waters thereof, and that it be enjoined from seeking to enforce the lease or to collect any moneys thereunder, etc., it being also alleged that certain actions for the recovery of rent are pending against the plaintiff in the Municipal Court. Complaint examined and

*Held*, that the former lease was valid to the extent that it demised the use of the defendant's bulkhead and pier, and that as long as the plaintiff remained in possession after the expiration of the term, there was a renewal of the lease year after year by holding over.

*Held, further*, that the complaint does not state facts entitling plaintiff to the relief demanded and should be dismissed, and that any defenses the plaintiff may have to the collection of rent can properly be set up in the actions in the Municipal Court, which the plaintiff seeks to restrain.

CROSS-APPEALS from an interlocutory judgment of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 3d day of March, 1919, sustaining demurrers to four separate defenses and overruling demurrers to two counterclaims contained in the answer.

The opinion of the Special Term is reported in *Union Ferry Co. v. Fairchild* (106 Misc. Rep. 324).

This opinion, written by the late Mr. Justice PHILBIN, and his last judicial work, is adopted unanimously by the court and handed down as its opinion in the decision of this case.

*George P. Hotaling* of counsel [*Forster, Hotaling & Klenke,* attorneys], for the plaintiff.

*Francis L. Durk* of counsel [*Cullen & Dykman,* attorneys], for the defendants.

PHILBIN, J.:

The demurrer of the plaintiff to the answer required an examination of the complaint to determine whether the allegations therein are sufficient to constitute a cause of action. (*Baxter v. McDonnell,* 154 N. Y. 432.)

The defendants are the permanent receivers of the Atlantic Dock Company, hereinafter referred to as the defendant. The facts set forth in the complaint are as follows: The plaintiff and its predecessor in title and grantor operated for several years prior to the year 1881 and the plaintiff does now operate a ferry across the East river from the foot of Hamilton avenue in the borough of Brooklyn to Whitehall street in the borough of Manhattan under a franchise from the city of New York. The plaintiff's grantor was known as the Union Ferry Company of Brooklyn. It will be referred to as the predecessor. One of its directors was also a director in the defendant corporation. He was the chief executive officer and the dominant and controlling factor in the actual management of both the predecessor and the defendant. He continued to be the controlling manager of defendant until his death in the fall of 1915. Thereafter the trustees of his estate were as such, or individually, the dominant factors in and in practical control of plaintiff and defendant.

On November 5, 1890, the predecessor sold and transferred to plaintiff all of the property used in operating the ferry including land and land under water at the foot of or adjacent to Hamilton avenue, and plaintiff entered into possession. As will later appear the defendant at all the times mentioned was the owner of the pier and bulkhead adjoining the ferry on the southwesterly side thereof. It further appears by the complaint that after the plaintiff so acquired title it was represented to it by defendant that for many years preceding the said sale to plaintiff, the predecessor had paid defendant for the right to use half of the ferry slip in the operation of the ferry, and which right and privilege defendant claimed was owned by it. Defendant then claimed that plaintiff should continue such payments.

Plaintiff believing the statements so made and in ignorance of the fact that defendant had no valid claim, paid to defendant from November, 1890, down to about February 1, 1916, large sums of money consisting of quarter annual payments of $750, amounting altogether to over $75,000. The payments were made upon the representation that plaintiff was using in the operation of the ferry the southwesterly half of the slip owned by defendant. Neither plaintiff nor defendant learned the facts in relation to said lease and claim until about February, 1916, after there had been a change of officers and in the executive management of plaintiff, and the new officers had requested from defendant a statement as to its right to receive and plaintiff's obligation to pay said rent. The defendant thereupon claimed that it was the owner of the said southwesterly half of the slip landing or approach to the ferry at or about Hamilton avenue in connection with which said rights and privileges had been granted by defendant. Plaintiff shortly thereafter upon an investigation learned for the first time that the property which had been the subject of said lease had always been since November, 1890, owned solely by plaintiff and that defendant did not own it or have any interest in it, and the lease and claim for rent had been made under mutual mistake as to such ownership. Plaintiff also learned at that time that on or about May 4, 1881, while the predecessor was in possession of and using the ferry, and

First Department, April, 1920.        [Vol. 191.

while the management of the plaintiff and defendant was under the control of the said director and executive officer, the lease referred to by defendant was made. It pretended to lease to the predecessor the privilege to use and occupy the southwesterly half of the slip, lying between the center line of Hamilton avenue and the northeasterly side or face of the bulkhead and pier on defendant's property, from the bulkhead across Hamilton avenue to the harbor commissioner's line, *together with the northeasterly side or face of the bulkhead and pier, for the purpose of securing erections, racks and bridges.* The southwesterly half of the slip consisted, at the time of the making of the lease, and ever since, except as to a portion thereof that had been filled in and occupied as a public street, of open and navigable waters of the East river. The lands under the water in the slip were owned by the State, and on or about February 8, 1886, were granted to the predecessor.

The lease expired by its terms on May 1, 1886, and was never renewed or extended by any writing. The defendant never did give possession of the southwesterly half of the slip to plaintiff or its predecessor since it was not the owner and the lease was made under the mutual mistake to which reference has already been made. The complaint further alleges that the plaintiff did not learn of the mistake nor of defendant's having no title until March, 1916.

The payments made to defendant were made inadvertently and without any obligation by plaintiff to make the same. They were made without consideration. On April 26, 1916, plaintiff demanded from defendant repayment of the moneys so paid but defendant refused to pay. Between May 1, 1881, and February 1, 1916, a large part of the space mentioned in the lease lying between the bulkheads and bulkhead line was filled in and is now part of the public streets, and out of the possession of plaintiff. The right or privilege of using the side or face of defendant's bulkhead and pier was, prior to February 1, 1916, abandoned and given up, and any ferry rack or bridge theretofore secured to any bulkhead or pier of defendant was taken down and removed and placed upon plaintiff's own land.

The defendant has brought three actions in the Municipal Court against the plaintiff upon the lease of 1881, alleging

that plaintiff upon the purchase of the property became liable as tenant. Demand is made therein for $750 quarterly rent said to be due for the use of the southwesterly half of the slip. The three actions cover a period from February 1, 1916, to October 31, 1916, and it is claimed therein that this plaintiff is a tenant and must remain one, paying defendant rent until it makes a legal surrender of the property. The plaintiff is required to operate the ferry for nearly two years more under the franchise granted by the city of New York and the said half of the slip is needed by it for that purpose. The plaintiff then alleges it has no adequate remedy at law.

Judgment is demanded that the lease and any alleged renewals thereof be adjudged void, and that defendant has no right, title or interest, or claim of any kind in the southwesterly half of the said ferry slip or the waters thereof or the lands under the waters thereof; that defendant be enjoined from attempting to in any way enforce the lease or collect any moneys thereunder, or interfere with plaintiff's use of the slip or any of the fixtures, racks and appurtenances therein in any way. It is also demanded that defendant pay the sum of $20,000 with interest from April 26, 1916. Plaintiff finally asks, if it be found it is not entitled to the foregoing relief, that any rent due from February 1, 1916, by reason of the lease be apportioned, so that in any event the plaintiff shall not be required to pay rent for any more than so much of any privilege granted by defendant as is now in actual possession of plaintiff, and for such further relief as may to the court seem just.

Since a copy of the lease is not made part of the complaint we must have recourse to the latter to ascertain what was leased. We think the property leased was so much of defendant's pier and bulkhead as was necessary to secure the plaintiff's ferry rack and bridge. A proper construction of the lease as described in the complaint would not warrant the inference that it included the right to use and occupy the waters of the slip as a separate element of the demise. Such use and occupation was simply an incident to the use of defendant's property. This view has the advantage of being consistent with the legal rights of the parties in the property owned or used by them as we understand such rights, and the

conclusion reached as to the true meaning of the lease finds support accordingly. The plaintiff under its franchise from the city had authority to maintain its ferry rack. The franchise requires the plaintiff to operate the ferry for nearly two more years. The ferry had been conducted by the predecessor for many years prior to the making of the lease of 1881, and it is to be assumed that the ferry rack and bridge were used during all that time for that purpose. Under the Montgomerie charter the city was given the sole, full, and whole power and authority to establish and direct ferries around Manhattan island for the carrying and transporting of people, horses, cattle, goods and chattels from the said island to Nassau island and back to Manhattan island, and a grant to the city of all ferries on both sides of the East river was made by the charter. (2 Colonial Laws of New York [Comp. Stat. Rev. Comm.] 613, 631, 632.) The city thus acquired title to the ferries in its private and not governmental capacity. It was under the duty to maintain the ferries as a part of the highways and of which they are a continuation. (*Matter of Wheeler*, 62 Misc. Rep. 37; affd., *sub nom. People ex rel. Wheeler* v. *City of New York*, 137 App. Div. 894; *Benson* v. *Mayor, etc.,* 10 Barb. 223.) The Hamilton Avenue ferry was established in the year 1848 (*Benson* v. *Mayor, etc., supra*), and, therefore, before the requirement as to spaces of 100 feet between piers in the act of 1857 (Laws of 1857, chap. 763). Even assuming that the defendant received a grant as early as the year 1840, when it was incorporated, it cannot be said that it acquired thereby such a right to use the waters of the adjoining slip as would preclude the erection of the ferry rack necessary to the operation of the ferry. It is not claimed by defendant that it acquired such right by the express terms of the grant, but it relies upon one said to be implied by law in relation to the access to its piers and bulkhead in the enjoyment of the use thereof. It has been held that public grants to individuals, under which rights are claimed in impairment of public interests, are to be construed strictly against the grantee; that although he can exclude all individuals from the permanent occupation of lands under tidewater held by him under such grant, he cannot exclude the State, which still has the right to regulate the use of the premises in the interest

of the public and for the protection of commerce and navigation. (*People* v. *New York & S. I. Ferry Co.*, 68 N. Y. 71; *Sage* v. *Mayor*, 154 id. 61.) Even the right of a riparian owner to have access to his upland and to build structures on the land under water for that purpose is subject to appropriation by the general government for some superior, lawful and public use. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74.) The only ground upon which defendant could have any right in lateral waters adjacent to its pier and not in front of any land owned by it must be based upon the right of the public in the public waters and that right was made subject to the public use for ferry purposes when the Hamilton Avenue ferry was established.

In *Jordan* v. *Metropolitan Gas Light Co.* (65 How. Pr. 255) the court granted an injunction restraining defendant from interfering with the construction of a ferry house and improvement at the foot of Forty-second street, New York city. The court referred to the claim of the defendant that the construction would abridge the advantageous use of its property south of the street line, and said that if that should prove to be the fact, as long as the improvements were confined within the limits of the street defendant could not for that reason interfere to prevent the improvements and changes being made; that if the use of defendant's property would be so abridged it would result from the fact that its northerly pier was constructed too near the southerly line of Forty-second street; that it could not, by locating it there in that manner, restrict or limit the right of the city to provide for the improvement of the street and of the ferry at the foot of it, as that had been allowed for the purpose of meeting the exigencies and convenience of the traveling public.

In *Stevens* v. *Rhinelander* (5 Robt. 285) plaintiff sought to restrain defendants from building a pier within 100 feet of land owned by them and upon which they had erected structures at the foot of Barclay street, New York city, for ferry purposes. The court held that there was no violation of chapter 763 of the Laws of 1857, as the bridge and ferry rack built solely for ferry purposes did not constitute a pier within the meaning of the act.

From what has already been said it must be apparent that

the plaintiff needed no lease or license from the defendant to allow it to use the lateral waters of the said slip in the operation of the ferry, or to maintain the rack and bridge for that purpose. This renders improbable an intention of the parties to include the easement in the waters in the lease since it may be assumed that they could not have been unaware of plaintiff's obvious and legal rights.

A consideration of the defendant's argument on this appeal leads to a like result, for it is not shown that defendant had anything else to lease except so much of its pier and bulkhead as was used by plaintiff. The defendant says that it claims that there was a lease of an easement which the defendant had in the slip, to wit, the right to bring vessels across the slip and berth them alongside the defendant's pier as well as the right to use the side of the pier and the bulkhead; that it was an easement, the exercise of which by the defendant would be fatal to the maintenance of the ferry, for if the defendant exercised its right to moor a vessel alongside of its pier it would be impossible for plaintiff to operate the ferry as one vessel might lie alongside the pier for a week.

The defendant was incorporated by chapter 215 of the Laws of 1840, for the purpose of erecting and maintaining bulkheads, piers, basins and other structures for commercial uses in the sixth ward of the city of Brooklyn and within the line established by law for the erection of docks and bulkheads, and to receive reasonable dockage and wharfage from all persons using the same. The act further provided that nothing therein should be taken to destroy, abridge or in any manner impair the rights of the city of New York in respect to the land between the lines of high and low water along the Brooklyn shore of the East river, nor should the act authorize any dock, wharf, pier or basin to be erected upon or in front of any of the lands belonging to the city of New York without the permission of the common council.

The defendant relies upon the case of *Murray* v. *Sharp* (1 Bosw. 539) in support of its claim that it is entitled to use of the waters adjoining its pier and bulkhead not included in its grant and to collect wharfage thereupon. The plaintiff in the *Murray* case in 1797 was the owner of upland at the upper corner of Wall street and the East river, and the city,

which had title to all the land under water around Manhattan island out four hundred feet in the East river and to the wharfage therefrom, granted him a water lot seventy-three feet wide in front of his lands. Murray agreed to construct South street along the river seventy feet wide and also a wharf in Wall street twenty-five feet wide fronting the basin. The whole bulkhead to be built by Murray was ninety-eight feet in extent and the city covenanted that upon Murray so building he would be forever entitled to wharfage for the entire ninety-eight feet. The pier and bulkhead were built by Murray as agreed. The above facts are not fully set forth in the report of the case but appear in *Mayor* v. *Scott* (1 Caines, 543), where a successor in title of Murray sued for wharfage. The defendants in the *Murray* case obtained a lease from the city of the slip at the foot of Wall street adjoining the pier erected by Murray for the purpose of running a ferry which would entirely destroy the wharfage of the pier erected by him pursuant to his agreement with the city. It was held that under the covenant by the city giving him the wharfage the plaintiff was entitled to recover. The decision in that case therefore, clearly has no application to the case at bar.

In *Matter of Public Service Commission* (*Montague Street*) (224 N. Y. 211), also cited by defendants, the rapid transit commission instituted a proceeding to acquire land for the purpose of constructing a. tunnel under the ferry slip at Montague street and between two piers owned by the New York Dock Company, appellant. The tunnel was to be forty-five feet below mean low water at the pier line. The owners of the upland were awarded compensation for the land and land under water out to the pier head, but compensation was refused the dock company on the ground it had not proved title to any of the property affected. Upon appeal the Court of Appeals said no permanent obstruction could interfere with appellant's use of the docks for the mooring of its vessels and the collection of wharfage. It further said that if navigation alongside of appellant's piers had been interfered with it might be entitled to compensation, but that the court was not yet called upon to decide whether such rights could be taken by the city, or whether if taken

and the navigation alongside the piers closed the dock company would be entitled to damages.

*Langdon* v. *Mayor, etc.* (93 N. Y. 129) is also cited as holding that the grant of wharfage at a wharf adjoining land under water belonging to the grantor carries with it, as a necessary incident, a right of way, or access for vessels over the grantor's adjacent land. In that case, however, the plaintiff was deprived of all access and the grant thus nullified. It could not be cut off from access to the front of its pier. (*Williams* v. *Mayor, etc.*, 105 N. Y. 419, 429.)

None of the cases cited by defendant is authority for claim of a right to use the waters of the slip in relation to its pier and bulkhead. On the other hand, it was held in *Jenks* v. *Miller* (14 App. Div. 474, CULLEN, J.) that while the owners of adjacent upland had the right of access to the river and also the right to construct a proper pier therein, they had no easement or interest in the lands under water of the adjacent proprietors. It was also so held in *Consumers Coal & Ice Co.* v. *City of New York* (181 App. Div. 388) and *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.* (N. Y. L. J. May 3, 1917; affd., 181 App. Div. 956). In the former case the plaintiff sought to restrain the city and the owner of the adjacent property from filling in the land under water out to the bulkhead line, claiming that to do so would constitute a violation of the restrictions as to 100 feet space between piers in the act of 1857. While the decision upholding the defendant might be considered as not strictly pertinent to the question here presented, as the act would seem to apply only to piers extending from the bulkhead line established by law, the court took occasion to pass upon the claim of the plaintiff to use the lateral waters in front of defendant's upland, and held it had no such right. In the case at bar the defendant frankly states that the possession of the easement claimed by it would enable defendant to impair plaintiff's use of its slip by having vessels of the defendant moored for a week to its pier. Nothing could be more convincing of the unsoundness of its claim than the statement so made.

The conclusion is reached that the lease of 1881 was a valid lease to the extent that it demised the use of the defend-

ants' bulkhead and pier, and as long as plaintiff remained in possession after the expiration of the term there was a renewal of the lease from year to year because of such holding over. (*Schuyler* v. *Smith*, 51 N. Y. 309; *Kennedy* v. *City of New York*, 196 id. 19.) Any defense the plaintiff may have can properly be set up in the pending actions brought by the defendants in the Municipal Court and which the plaintiff seeks to restrain.

It follows that the complaint does not state a cause of action entitling plaintiff to the relief therein demanded and should be dismissed. The defendants state in their brief that if the complaint is dismissed they are indifferent to the disposition of the counterclaims which may be the subject of a separate action and we, therefore, have no occasion to pass upon their sufficiency.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.