New York Dock Company, Appellant, Respondent, *v.* Flinn-O'Rourke Company, Inc., and The City of New York, Respondents, Appellants.

Second Department, November 4, 1921.

Waters and watercourses — navigable waters — pier slip and lands underneath taken by city of New York for construction of subway under agreement to pay — subsequent lease of land to plaintiff did not waive its right to compensation — plaintiff could not be deprived of rights without compensation except for improvement of navigation — construction of subway underneath slip not for purpose of improving navigation — city liable for destruction of plaintiff's rights in slip.

The city of New York, through the Public Service Commission, entered into a stipulation with the plaintiff, the owner of two adjoining piers at the foot of Montague street in said city, whereby the city was authorized and empowered to enter into and upon the waters and lands under water in the slip between the piers for the purpose of constructing a tunnel for a subway. The stipulation provided that the plaintiff should be entitled to receive such sum as might be agreed on or as might be awarded to it by any court upon establishing the right to compensation. In condemnation proceedings instituted by the city it was decided that the plaintiff had rights in said slip but that the proceeding was not appropriate to extinguish them or to fix the compensation that should be made therefor. The city entered into the exclusive possession of said slip and the lands thereunder and constructed its subway. It was conceded that it would imperil the safety of the subway for the plaintiff to use said slip for navigation purposes and, pending the condemnation proceedings, the plaintiff leased from the city the land under the slip for the purpose of constructing a pier thereon.

In an action to restrain the city from the continuance of a situation which destroys plaintiff's rights or to obtain compensation for said rights, *held,*

that, in view of the fact that the city entered into the possession of said slip under an agreement to pay the plaintiff for its rights therein, the execution of the lease to the lands under the slip did not constitute a waiver of plaintiff's right to compensation.

The judgment awarding as the only compensation to the plaintiff for the destruction of its rights in the slip, the rental value thereof from the time the city took possession should be reversed.

The plaintiff was the owner of the two piers with the right to moor vessels between them. This right, though subject in its exercise to regulation by the sovereign authority, was a valuable property right, of which it could not be deprived without compensation except for the purpose of improving navigation.

The construction of the subway, which was authorized by the Legislature, was not for the purpose of improving navigation, likewise the consent of the Secretary of War to the plans for the construction thereof was not for the purpose of improving navigation but rather to prevent interference therewith, and so the city is bound to compensate the plaintiff for the destruction of its rights in the slip.

APPEAL by the plaintiff, New York Dock Company, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 24th day of November, 1919, upon the decision of the court rendered after a trial at the Kings Special Term.

Appeal by the defendants, Flinn-O'Rourke Company, Inc., and the City of New York, from so much of said judgment as fails and refuses to dismiss the complaint and directs a reference to take evidence of the amount of plaintiff's damages and to report to the court thereon with the referee's recommendation as to the amount of said damage.

*Charles E. Hotchkiss* [*Andrew Macrery* with him on the brief], for the plaintiff.

*Edward M. Grout,* for the defendant Flinn-O'Rourke Company, Inc.

*Charles V. Nellany* [*John P. O'Brien, Corporation Counsel, John F. O'Brien, F. R. Rubel* and *D. F. McMahon* with him on the brief], for the defendant City of New York.

JAYCOX, J.:

On the 9th day of December, 1914, the plaintiff was the owner of piers Nos. 14 and 15, situate near the foot of Montague street, in the borough of Brooklyn. The defendant

the city of New York had prior to that date entered into a contract with the other defendant, Flinn-O'Rourke Company, Inc., for the construction of the Whitehall Street-East River-Montague Street subway. By this contract the defendant city of New York agreed to put the other defendant, the contractor, in possession of the Montague street slip, as the space between piers Nos. 14 and 15 was then called. For the purpose of procuring possession of the slip for its contractor, the city of New York, on the date above mentioned, acting through the Public Service Commission, entered into a stipulation with the plaintiff whereby the said city was authorized and empowered to enter into and upon the waters and lands under water in said slip for the purpose of constructing the tunnel known as the Montague street tunnel for said subway. The stipulation provided that the plaintiff should be entitled to receive such sum or sums as might be agreed upon as compensation or might be awarded to it by any court upon establishing the right to compensation, and that the interest on said sum should run from the 7th day of December, 1914, the day on which the city had actually entered into exclusive possession. In brief, the city, without recognizing that the plaintiff had any rights in said slip, stipulated to institute appropriate condemnation proceedings to have plaintiff's rights ascertained and to pay the compensation awarded for such rights. Thereafter the city instituted condemnation proceedings in which it was ultimately decided that the plaintiff had rights in the slip in question but that the proceedings were not appropriate to extinguish those rights or to fix the compensation that should be made therefor. (*Matter of Public Service Comm.* [*Montague St.*], 224 N. Y. 211.) The result is that the city, pursuant to the stipulation, has entered into the exclusive possession of the slip, excluded the plaintiff from the exercise of its rights and has constructed a tunnel under the bed of the river in said slip so that it is now conceded that it would be unsafe and improper for the plaintiff to exercise any of its rights in said slip; and for the exclusion from its property and the destruction of its rights the plaintiff has received no compensation. This action is brought to restrain the defendants from the continuance of a situation which destroys plaintiff's rights or to obtain compensation for said rights. Thus

far the plaintiff has been unsuccessful except in a very limited extent. It has been allowed the rental value of these rights from the date the city took possession to the date of the lease hereinafter mentioned.

When the condemnation proceedings above referred to were instituted the plaintiff endeavored to broaden the scope thereof and make it clear that the rights of the plaintiff were involved in that proceeding. This was opposed by the city of New York and it succeeded in limiting that proceeding to the land under water between the two piers, and it was subsequently held by the commissioners that the plaintiff's rights were not embraced within the description contained in that proceeding and this holding was affirmed by the Court of Appeals. (224 N. Y. 211.) After making the stipulation above mentioned, and while the condemnation proceeding was pending, the plaintiff entered into an agreement dated June 2, 1916, whereby the plaintiff leased from the city the lands under water in the slip and agreed to construct a pier over the same. The trial court has held that by entering into this lease the plaintiff has waived all claim to fee damages and all claim to rental damages from and after the date of such agreement. (See 107 Misc. Rep. 190.) The plaintiff, at the time of making the stipulation above mentioned, was under the Greater New York charter (Laws of 1901, chap. 466, § 859) entitled to moor vessels at its piers and to collect wharfage and dockage therefor. Depending upon this stipulation, the plaintiff permitted the city to enter into possession of this property. By the stipulation the city agreed to ascertain and pay for plaintiff's rights. Entering under this agreement, the city has so changed the situation that the plaintiff's rights have been destroyed. Vessels cannot with safety be moved over the tunnel constructed under the slip. The city, wishing to further protect said tunnel, has leased the land under water in said slip to the plaintiff for the purpose of erecting a pier thereon. Can it be said that this lease destroyed or waived plaintiff's rights? I do not so construe it. The plaintiff's rights (except as a cause of action) had been extinguished. The plaintiff surrendered them to the city upon its promise to pay therefor. The execution of this lease was not a waiver. It was the recognition of an existing condition. Plaintiff did not waive

its cause of action, and that was all that existed at the time the lease was executed. If the city had entered without any agreement, the situation would have been different. Then the lease might have been considered a waiver. When, however, the plaintiff's rights have been rendered worthless under an agreement to pay therefor, I cannot see that the situation is changed by plaintiff's treating as defendant's property the rights for which it promised to pay. If any other species of property were sold to the city upon a promise to pay therefor when the value was ascertained, I think that the subsequent recognition of the city's title would not be construed as a waiver of the seller's right to the purchase money. It cannot make any difference because the subject of the sale is an intangible right. The city agreed to pay for these rights; it destroyed them; therefore, it should pay.

It is urged that the plaintiff had no property rights of any value in the waters in question and that any rights that the plaintiff had have been limited or extinguished by the sovereign power under its paramount authority and the plaintiff, therefore, is entitled to no compensation. The plaintiff owned two piers extending into the waters of New York harbor and under the laws of the State of New York no pier could be erected between them. (Laws of 1857, chap. 763; *Matter of Public Service Comm.* [*Montague St.*], 224 N. Y. 211.) This gave the plaintiff a slip in which at the sides of the piers vessels could be safely moored and conveniently unloaded. The plaintiff was entitled to collect wharfage from the vessels thus moored and unloaded. The land under water between these two piers was owned by the Pierrepont estate, but that ownership was subject (as is all private property in navigable waters) to the right of navigation and to the right of the public as represented by the State and National governments to improve navigation. (*Lewis Blue Point Oyster C. Co.* v. *Briggs,* 198 N. Y. 287; 229 U. S. 82; *Greenleaf Lumber Co.* v. *Garrison,* 237 id. 251; *Willink* v. *United States,* 240 id. 572; *Langdon* v. *Mayor, etc.,* 93 N. Y. 151; *The Number 6,* 241 Fed. Rep. 69.)

It is undisputed that the action of the State in limiting the right to build piers was a legitimate exercise of its power as the representative of the people of the State. (*Shively* v. *Bowlby,* 152 U. S. 1; *Town of Brookhaven* v. *Smith,* 188 N. Y.

74; *Barnes* v. *Midland R. R. Terminal Co.*, 193 id. 378; *Matter of Montague St., supra.*) The land of Pierrepont was subject to the right of navigation. The mooring of vessels is a necessary part of navigation and, therefore, the space for and the place where vessels may be moored is subject to governmental control and regulation. (*Greenleaf Lumber Co.* v. *Garrison, supra.*) The right to thus moor vessels is not common to the general public. It is a special right vested in the pier owner. It is a valuable right, as the owner can collect wharfage. (*Matter of Montague St., supra.*) The pier owner's right to moor vessels is not limited to the ends of the pier even under the situation here disclosed. Such a construction would be subversive of the very object and purpose of the act itself. It would be an absurd construction to deny one owner of land under water the right to erect a pier because it would be within the prescribed distance of a pier already erected by an adjoining owner and then deny that pier owner the right to use the sides of his pier because the vessels moored to it would rest upon and float in the water over the land of the first mentioned owner. This construction cannot find support in reason nor in the controlling decisions of the courts of this State. I am aware that decisions exist in which this doctrine is asserted — notably in *Consumers Coal & Ice Co.* v. *City of New York* (181 App. Div. 388). The application of the doctrine, however, I do not regard as essential to the decision of that case and the decision was not further appealed. The construction for which I contend, however, has had the approval of the Court of Appeals not only in relation to this very slip (*Matter of Montague St., supra*), but also in *Matter of McClellan* (146 App. Div. 594), which was affirmed by the Court of Appeals upon the opinion of Mr. Justice CARR in this court. (204 N. Y. 677.) In that case it was held that a pier owner, under the same situation as is disclosed in this case, had not only the right of reasonable access over the water covering the land between the piers, but he also had the right and was under the positive duty imposed by statute of keeping the slip so dredged out as to permit the ordinary use thereof by commerce. In that case it was decided that the city was the owner of the land between the piers, exactly the same situation as now exists here, and in relation to it the court

said: "The city, however, could not use these lands for any purpose in such manner as to impair or damage the rights of the dock company as pier owners, or as grantees under the grant of 1902 so far as it elsewhere applies, and where such impairment and damage is shown compensation must be made." The Court of Appeals in its decision in relation to this very slip, made in *Matter of Montague St., supra*), reiterated and again applied the same principle. The claim that the rights of the plaintiff in this slip have been limited or extinguished, I think, rests upon grounds that are clearly fallacious and devoid of authority. It is not claimed that there is any action by any competent authority directly and expressly affecting the plaintiff's rights; but it is claimed that this result is a necessary inference from the act of the Legislature authorizing this subway and the approval of the Secretary of War of the plans for the same. The power of the Legislature and the Secretary of War to thus limit the rights of navigation vested in the general public for the purposes of this discussion may be safely admitted. That, however, is far from admitting that rights of private property may be thus destroyed. Private property in the waters of this State and in all other States where the derivation of title is the same is subject to the public right of navigation and, as a necessary incident thereto, the right to improve navigation, and to no other servitude. In *Gibson* v. *United States* (166 U. S. 269, 271) the court said: "All navigable waters are under the control of the United States for the purpose of regulating and improving navigation, and although the title to the shore and submerged soil is in the various States and individual owners under them, it is always subject to the servitude in respect of navigation created in favor of the Federal government by the Constitution." No case has been called to my attention and I have discovered none in which the right to interfere with private property rights in navigable waters has been upheld upon any ground except to improve navigation. It is plain that the purpose sought by the construction of this subway was not to improve navigation and all proceedings had in relation thereto indicate that the rights which would flow from an attempt to improve navigation have not been claimed. The land under water in this slip was taken and proceedings

were had to ascertain the amount of damages occasioned by that taking. If that land was taken to improve navigation the proceedings were unnecessary and the owner not entitled to compensation. It must, I think, be conceded that the owner of the land under water was entitled to compensation, and, therefore, it necessarily follows that the plaintiff, being possessed of such rights as under common-law principles were incident and appurtenant to the ownership of the piers above mentioned, cannot be deprived of those rights until compensation is awarded. Neither the State Legislature nor the National government has shown an intention to limit or extinguish any of plaintiff's rights. The city could not do so. (*West Chicago Railroad* v. *Chicago*, 201 U. S. 506.) The Secretary of War has approved plans for the building of this subway according to which the tunnel was to be forty-five feet below mean low-water mark at the pier line. Was this a consent to an interference with navigation? I feel certain it was not. On the contrary, I think it indicated very clearly that navigation was not to be interfered with. These plans constituted an assurance that navigation would be undisturbed. The city, however, wishes to protect the subway from injuries which it might receive by the continuance of navigation and, therefore, wishes to acquire plaintiff's rights in this slip and close it. This is no part of the general plan for the subway, and the approval of the plan does not authorize it any more than it authorizes the closing of navigation upon the entire river should the engineers in charge of the subway deem that necessary. These steps are not taken to improve navigation but are taken for the purpose of protecting the subway from the risks incident to navigation. I, therefore, conclude that neither the State nor the general government has shown any intention of interfering with the plaintiff's rights and, further, that those rights cannot be interfered with for the promotion of this project because its purpose is not to improve navigation. (*Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287; 229 U. S. 82; *Greenleaf Lumber Co.* v. *Garrison*, 237 id. 251; *Willink* v. *United States*, 240 id. 572; *Langdon* v. *Mayor, etc.*, 93 N. Y. 151; *The Number 6*, 241 Fed. Rep. 69.) As the city deemed the acquisition of the plaintiff's rights necessary and under the agreement in relation thereto

the city has excluded the plaintiff from the exercise of its rights, the plaintiff is entitled to compensation at the city's hands.

The interlocutory judgment should be reversed as to both defendants, and a new trial granted, with costs to abide the event.

RICH and MANNING, JJ., concur; BLACKMAR, P. J., concurs in the result in a separate memorandum; with whom KELLY, J., concurs.

BLACKMAR, P. J.:

Except for the expressions contained in the opinion of the Court of Appeals, I should think that the dock company had no property in the land under water owned by the Pierrepont estate nor in the water over such land. The right to bring vessels alongside the dock over the land of another would seem to be by virtue of the right of navigation in the public, and not a property right of an individual; but in view of the expression of opinion in the decision of the Court of Appeals I concur in the result.

KELLY, J., concurs.

Interlocutory judgment reversed as to both defendants, and a new trial granted, with costs to abide the event.