New York Dock Company, Plaintiff, *v.* Flinn-O'Rourke Company, Inc., and The City of New York, Defendants.

Supreme Court, Kings Special Term, June, 1923.

**Easements — abandoned ferry slip — right of access over waters of old slip to piers adjoining — closing of old ferry slip by construction of tunnel — lease of old slip to plaintiff not a bar to action for damages to fee of piers adjoining.**

The plaintiff, a dock company, entitled under the Greater New York charter (Laws of 1901, chap. 466, § 859) to moor vessels at its piers and collect wharfage and dockage therefor. while condemnation proceedings instituted by the public service commission on behalf of the city to acquire title to lands under water in the Montague street slip, Brooklyn, formerly occupied by the Wall Street ferry, were pending, leased from the city of New York the lands under water in the slip and agreed to construct a pier over the same. The Appellate Division, upon reversing the judgment in the former trial of this action for an injunction to restrain the occupation of said slip, which lies between two of plaintiff's piers, for the construction of a tunnel for the subway system, or in the alternative for compensation, determined that the plaintiff, by entering into said lease, surrendered and abandoned any rights and easements which it may have had in and over the waters of the slip and that the only right which survived the lease was the right to recover the compensation which the city, by the stipulation under which it, the public service commission and the contractors for the construction of the tunnel, had originally entered upon the slip in 1914, had agreed to pay for such rights if it should be judicially determined that there were any. A judgment of the Appellate Division dismissing, after reargument, the complaint as against the defendant contractor and granting a new trial as to the remaining defendant. was by a decision of the Court of Appeals, based solely on the pleadings, modified so as to grant a new trial to the defendant contractor. Upon the present trial *de novo, held*, that at the time the action was begun plaintiff had no cause of action for injunctive relief against either the city or the tunnel contractor, but only a cause of action against the city for a sum of money.

The stipulation under which defendants originally entered upon the slip clearly contemplated that the fee damage should be fixed as of the date stated therein, and that the city should pay to the plaintiff the amount so fixed, with interest from said date. *Held*, that plaintiff was not entitled to recover rental damages.

The provision of the statute (Laws of 1857, chap. 763), entitled " An act to establish bulkhead and pier lines for the port of New York," relative to the distance between piers, if it survived prior legislation, was repealed by section 1008 of the Greater New York charter, with the advent of which, in 1898, all statutory provisions as to the distance between piers were wiped out and the whole matter left to the department of docks of the greater city subject to the approval of the commissioners of the sinking fund. *Held*, that so far as plaintiff's claim depended upon said statute of 1857, there was no basis for an award of damages, and further, that plaintiff was not in a position to claim that easements of access over the waters of the slip were created by the deeds under which it claims title to its piers on either side of the slip in question.

While it is clear that the city in the interests of navigation and without compensation to plaintiff, could have built or authorized structures in the slip which would have cut off access to plaintiff's piers over the waters of the slip, the city

as representing the public, had no right to construct a subway in the slip, thus closing it, without compensating plaintiff for the loss of such easements of access as it has over the waters of the slip.

The trend of judicial decision as to whether at common law an owner of upland and land under water in front of the same having a pier constructed at or near the side boundary line of his land and land under water, has the right of access to that pier over adjacent land under water in the private ownership of another, is in favor of the existence of such a right.

Plaintiff having a right of access to its piers over the waters of the slip was entitled to recover of the city damages for the destruction of such right as of the date of the original entry of defendants upon the slip.

Taking into consideration the fact that the proper city authorities were not bound by any law requiring a distance of at least one hundred feet between piers and in improving the waterfront could have authorized the erection of a pier or other structure in the slip in aid of navigation and the further fact that plaintiff by permission of the proper municipal authorities might have extended its piers or built new piers extending to the present pierhead line, and that it might with like permission have dredged the slip outside of the bulkhead, plaintiff is awarded, as a fee damage, the lowest figures given by its experts, less a depreciation of twenty-five per cent, because of the possibility of the appropriation of the slip for purposes of navigation.

SUIT for an injunction or in the alternative for compensation.

*Davies, Auerbach & Cornell* (*Charles E. Hotchkiss* and *Andrew Macrery*, of counsel), for plaintiff.

*Edward M. Grout* and *Paul Grout* (*Edward M. Grout* and *Dean Potter*, of counsel), for defendant Flinn-O'Rourke Company, Inc.

*George P. Nicholson*, corporation counsel (*Charles V. Nellany* and *Frank R. Rubel*, of counsel), for defendant The City of New York.

BENEDICT, J.  This is a retrial of this action after the reversal of the judgment rendered on the former trial.  On the original argument in the Appellate Division the judgment was reversed and a new trial ordered as to both defendants (198 App. Div. 376), but on reargument allowed by that court the complaint was dismissed as against the defendant Flinn-O'Rourke Company, and a new trial granted of the issues between the plaintiff and the remaining defendant.  *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.*, 200 App. Div. 871.  The Court of Appeals, however, modified the judgment of the Appellate Division so as also to grant a new trial as to the Flinn-O'Rourke Company.  *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.*, 234 N. Y. 126.

The only question considered by the Court of Appeals was whether or not the complaint should have been dismissed as against the Flinn-O'Rourke Company, and a reading of the opinion of that court shows that the determination of that question was made solely on the pleadings and that the evidence was not considered. Each party to the action took an appeal to the Appellate Division,

the plaintiff from the whole judgment and the defendants from such parts of the judgment as they regarded as prejudicial to them respectively. The reversal by the Appellate Division, as modified by the Court of Appeals, was complete. The present trial is, therefore, a trial *de novo*, and nothing that was done or decided on the former trial has any binding force.

It was stipulated by the respective counsel that the case should be tried this time upon the record of the former trial, subject to such motions to strike out evidence as any party might make, and that any party might produce, subject to objection, such additional evidence as it chose. On the trial decision was reserved on certain questions of evidence. I have indicated on the stenographer's minutes my rulings on these reserved questions, and the party against whom the ruling was made is allowed an exception in each instance.

In opinion of the Appellate Division rendered upon the original argument (198 App. Div. 376) the court, referring to the stipulation of December 9, 1914, under which the defendants originally entered upon the slip in question, and to the agreement of June 2, 1916, by which the defendant city of New York leased to the plaintiff lands under water lying in the slip, said: "After making the stipulation above mentioned, and while the condemnation proceeding was pending, the plaintiff entered into an agreement dated June 2, 1916, whereby the plaintiff leased from the city the lands under water in the slip and agreed to construct a pier over the same. The trial court has held that by entering into this lease the plaintiff has waived all claim to fee damages and all claim to rental damages from and after the date of such agreement. (See 107 Misc. Rep. 190.) The plaintiff, at the time of making the stipulation above mentioned, was under the Greater New York charter (Laws of 1901, chap. 466, § 859) entitled to moor vessels at its piers and to collect wharfage and dockage therefor. Depending upon this stipulation, the plaintiff permitted the city to enter into possession of this property. By the stipulation the city agreed to ascertain and pay for plaintiff's rights. Entering under this agreement, the city has so changed the situation that the plaintiff's rights have been destroyed. Vessels cannot with safety be moved over the tunnel constructed under the slip. The city, wishing to further protect said tunnel, has leased the land under water in said slip to the plaintiff for the purpose of erecting a pier thereon. Can it be said that this lease destroyed or waived plaintiff's rights? I do not so construe it. The plaintiff's rights (except as a cause of action) had been extinguished. The plaintiff surrendered them to the city upon its promise to pay therefor. The execution of this lease was not a waiver. It was the recognition of an existing

condition. Plaintiff did not waive its cause of action, and that was all that existed at the time the lease was executed. If the city had entered without any agreement, the situation would have been different. Then the lease might have been considered a waiver. When, however, the plaintiff's rights have been rendered worthless under an agreement to pay therefor, I cannot see that the situation is changed by plaintiff's treating as defendant's property the rights for which it promised to pay. If any other species of property were sold to the city upon a promise to pay therefor when the value was ascertained, I think that the subsequent recognition of the city's title would not be construed as a waiver of the seller's right to the purchase money. It cannot make any difference because the subject of the sale is an intangible right. The city agreed to pay for these rights; it destroyed them; therefore, it should pay.''

From this I understand that, in the opinion of the Appellate Division, the plaintiff by entering with the city into the agreement of June 2, 1916, surrendered and abandoned any rights and easements which it may have had in and over the waters of the slip, and that the only right which survived this agreement was the right to recover the compensation which the city had by the stipulation of December 9, 1914, agreed to pay for such rights, if it should be judicially determined that there were any. From this it follows that at the time this action was begun the plaintiff had no cause of action for injunctive relief against either defendant, but only a cause of action for a sum of money against the city.

The plaintiff has not established a cause of action of any kind against the Flinn-O'Rourke Company, because that defendant was not at any time a trespasser upon the rights and easements which plaintiff claims it had in the slip; that defendant originally entered by permission of the plaintiff, and that permission was not withdrawn until March, 1917, after the plaintiff had relinquished whatever rights it had in or over the waters of the slip, save only the right to recover the stipulated compensation, and when, therefore, plaintiff had ceased to have any right to require said defendant to remove its structures from the slip. Assuming that the plaintiff might at any time after January 10, 1915, and prior to June 2, 1916, have required said defendant to remove its structures from the slip and cease its operations therein, and thereupon have treated said defendant as a trespasser, if it failed to comply with such demand, plaintiff did not take that course. The said defendant must be deemed, therefore, to have occupied the slip during the period between January 10, 1915, and June 2, 1916, by permission of the plaintiff, and hence said defendant is not liable to plaintiff for damages for trespass. This conclusion is not in conflict with

anything that was decided by the Court of Appeals on the appeal to that court above mentioned; for, as already noted, the decision of that court was based solely on the pleadings, and no attempt was made to determine whether or not the plaintiff produced sufficient evidence to sustain its alleged cause of action against said defendant. I now decide that the evidence shows that the plaintiff has no cause of action against the defendant Flinn-O'Rourke Company.

The next question is as to the basis on which damages, if any, are to be determined. Plaintiff claims that it should have rental damages up to the time of the trial, and fee damages also. I think, however, the decision of the Appellate Division, from which I have quoted, disposes of that question. The only right which survived the agreement of June 2, 1916, is to recover such compensation as the city agreed to pay. That agreement is contained in the stipulation of December 9, 1914, which, I understand the Appellate Division to hold, was, in effect, ratified or revived, if it had lapsed, by the agreement of June 2, 1916. That stipulation clearly contemplated that the fee damage should be fixed as of December 7, 1914, and that the city should pay to the plaintiff the amount so fixed with interest from said last-mentioned date. Plaintiff is not, therefore, entitled to recover rental damages.

The next and final question is whether plaintiff is entitled to recover fee damages from the city. In the opinion in *Matter of Public Service Commission (Montague St.)*, 224 N. Y. 211, the Court of Appeals, discussing the alleged rights of the plaintiff in the slip, said: " Its sole claim to damage arises out of chapter 763 of the Laws of 1857, entitled 'An act to establish bulkhead and pier lines for the port of New York.' "

The opinion then quotes from the act certain provisions including those that piers shall not exceed 70 feet in width, and that the intervening spaces shall be at least 100 feet. Then after stating the right of the plaintiff in the present action to compensation if the city should close the slip and cut off access to its piers, the opinion continues as follows: "Although by the repeal of chapter 763 of the Laws of 1857, the state could remove all basis for this claim, yet so long as this statute remains upon the books and the water must be kept clear for a hundred feet from the piers, the dock company may have such rights as require compensation if taken away for public purposes."

The city now for the first time in this case or in the litigation growing out of the use of the Montague street slip for the subway advances the proposition that the act of 1857 has been repealed. It bases its argument upon section 817 of the Greater New York charter, which gives to the commissioner of docks of the city of

New York, with the approval of the commissioners of the sinking fund, power " to adopt and execute a plan or plans for the water-front of the city of New York, as constituted by this act, and to fix and establish the line of solid filling, bulkheads and pierhead lines, the distance between piers, method and character of con-struction of wharves and piers within the entire territory of the city of New York, as constituted by this act." The charter as originally enacted in 1897 provided for a board of three commis-sioners designated the board of docks, in which such powers were vested subject to the approval of the commissioners of the sinking fund. The amendment of 1901 provided for a single commissioner.

As the question thus raised has not in this litigation been con-sidered either by the Court of Appeals or the Appellate Division, this court must give it the same consideration as if the case were now on trial for the first time.

It is difficult to resist the conclusion that the act of 1857 was repealed by section 817 of the charter, or at least so modified that the requirement that there should be intervening spaces of 100 feet between piers was no longer binding on the city authorities.

A consideration of this question involves a review to some extent of the legislation affecting the Brooklyn water front at the location in question. By the Montgomerie charter of 1730 the jurisdiction of the mayor, aldermen and commonalty of the city of New York was extended to low-water mark on the shore of Long Island from Hell Gate or beyond to Red Hook, a distance of several miles, including the location involved in this action. By the Cornbury charter of 1708 there was granted to the mayor, aldermen and com-monalty of the city of New York, the fee of the land between high and low-water marks on the Long Island shore from Wallabout to Red Hook, and the Montgomerie charter aforesaid contained a similar provision. It has been held that the jurisdiction of the old city of New York extended only to actual low-water mark, and that where the shore line had been changed by the erection of piers, wharves, etc., these were under the jurisdiction of the village and later of the city of Brooklyn at least for police purposes. *Udall* v. *Brooklyn*, 19 Johns. 175; *Matter of Furman Street*, 17 Wend. 649, 660, 661; *Atlantic Dock Co.* v. *City of Brooklyn*, 1 Abb. Ct. App. Dec. 24.

By chapter 574 of the Laws of 1871 the legislature authorized the department of docks of the city of New York to determine upon a plan or plans for the whole or any part of the waterfront and further provided that upon the adoption of any such plan by the commissioners of the sinking fund such plan should be " the sole plan according to which any wharf, pier, bulkhead, basin,

dock, or slip, or any wharf, structure or super-structure shall there-after be laid out or constructed within the territory or district embraced in or specified upon such plan, and be the sole plan and authority for solid filling in the waters surrounding said city and for extending piers into said waters and erecting bulkheads around said city; and all other provisions of law regulating solid filling and pier and bulkhead lines in said waters are to be deemed repealed upon the filing of said plan, if said plan be inconsistent with such provisions of law."

The provisions of the act of 1857, as to the width of piers and the distance between them, were carried into the Consolidation Act (Laws of 1882, chap. 410, § 731) in the following form:

" Sec. 731. Except as in this chapter otherwise provided, it shall not be lawful to erect any pier exterior to the bulk-head line estab-lished by law which shall exceed seventy feet in width, with inter-vening water spaces between such piers of at least one hundred feet, nor shall it be lawful to extend such pier or piers beyond the exterior or pier line nor beyond or outside of the sea wall established by law."

The clause " except as in this chapter otherwise provided,' apparently refers to the provisions of section 712 of the same act which were taken from the act of 1871, above quoted.

In view of the authorities cited to the effect that the jurisdiction of the city of New York extended on the Long Island shore to the actual line of low water, rather than to the original line of low water, it is possible that the wharves and piers were under the jurisdiction of the city of Brooklyn (see Brooklyn charter of 1854 [Laws of 1854, chap. 384], tit. II, § 13, subd. 2; Id. [Laws of 1873, chap. 863], tit. II, § 13, subd. 4; Id. [Laws of 1888, chap. 583], tit. II, § 12, subd. 3); but at all events the water and land under water in the slips, to low-water mark, were under the jurisdiction of the city of New York and its dock department (*Stryker* v. *Mayor of New York*, 19 Johns. 179), and the provisions above referred to of the act of 1871 and the Consolidation Act were applicable to such waters and lands under water, if not to the piers themselves. Under such circumstances it may be that no plan for the improvement of the Brooklyn waterfront could have been carried into execution without the concurrence of both municipalities, but with such con-currence it undoubtedly could have been done.

With the advent of the Greater New York Charter in 1898, all statutory provisions as to the distance between piers were wiped out and the whole matter was left to the department of docks of the greater city, subject to the approval of the commissioners of the sinking fund.

In my opinion the act of 1871 gave the designated city authorities power to disregard the 100-foot requirement in making their plans for the waterfront, and the same power was continued in the Consolidation Act, and both acts were applicable to the Brooklyn waterfront and all slips thereon, at least as far as actual low-water mark. The Greater New York Charter expressly repealed all provisions of the Consolidation Act and other acts of the legislature " affecting the local government of the City of New York, as heretofore constituted, so far as any provisions thereof are inconsistent with the provisions of this act, or so far as the subject matter thereof is revised or included in this act, and no further." § 1608.

In my opinion the provision of the act of 1857 relative to the distance between piers, if it survived the prior legislation already mentioned, was repealed by the Greater New York Charter. There appears to be a clear inconsistency between an act by which the legislature itself fixes the minimum distance between piers, so that nothing but another act of the legislature can change it, and an act which leaves it to administrative officers of a municipality to fix such distance without restraint or limitation. I should conclude in such a case that there was a repeal, even though it were necessary to rest entirely on the doctrine of implied repeal. *People ex rel. Valiant* v. *Patton,* 221 N. Y. 409; *People ex rel. Bronx Parkway Comm.* v. *Common Council,* 229 id. 1, 8; *Lyddy* v. *Long Island City,* 104 id. 218. But it is not necessary here to rely wholly on that doctrine, because of the provisions of section 1608 of the Greater New York Charter. Hence so far as the plaintiff's claim depends on the act of 1857, there is no basis for an award of damages.

The next question is whether plaintiff had any rights in the Montague street slip independent of the act of 1857, for the taking of which it is entitled to compensation. It seems unnecessary to trace in minute detail the title of the plaintiff to piers 14 and 15, as they have been known in this action. It is clear that at the time of his death Henry E. Pierrepont, the elder, was the owner by grants from the state and city and deeds from individuals of the dock property and land under water between the westerly side of Furman street and the then pierhead line from a line 26 feet southerly from the southerly side of Montague street to a line more than 500 feet northerly therefrom. This included the land under water in the ferry slip and the pier designated in this action as pier 14, but did not include pier 15. The executors of and trustees under his will on January 23, 1895, conveyed to Thomas A. McIntyre land under water and adjacent upland by a description which included, as I understand, all the land between the westerly side of Furman street and the pierhead line, and between the southerly

side of pier 14 and a line more than 400 feet northerly thereof, subject as follows:

" Subject, Nevertheless, to all the covenants and restrictions which are contained in a certain agreement in writing bearing date the twenty-second day of June, 1852, made by and between the late Henry E. Pierrepont and others, the heirs and devisees of Hezekiah Beers Pierrepont, recorded in the office of the Register of the County of Kings in Liber 327 of Conveyances, at page 149, which covenants and restrictions the said party of the second part, for himself and his heirs and assigns, hereby covenants to perform and keep.

" Subject, Also, to the fulfillment of all existing leases affecting said property and to the right to maintain a lantern and bell for ferry purposes on the pier on the southerly line of said lot known now as Pier No. 2, and to maintain a rack or fender on the southerly line of said pier; and the said parties of the first part do covenant with the said party of the second part that the parties of the first part have not done or suffered anything whereby the said premises have been encumbered in any way whatsoever except as above written, and also that the said party of the second part shall quietly have and enjoy the said premises."

The deed contained no grant of any easement of access over the waters of the slip, and the slip was at the time occupied by the Wall Street ferry.    The plaintiff claims under said Thomas A. McIntyre, except as to lands under water outside the then pierhead line.

As to pier 15, the upland and tideway to low-water mark, adjacent to what was afterward the ferry slip, and on both sides thereof, were owned by Hezekiah B. Pierrepont.    His executors and trustees conveyed the same on June 16, 1845, to William S. Packer, from a line one hundred and sixty feet northerly from the southerly side of Montague street extended to a line ninety-six feet southerly thereof.    Packer's widow and devisee conveyed to John H. Prentice on November 1, 1855, and on June 16, 1866, John H. Prentice and wife conveyed to Henry E. Pierrepont so much of the property conveyed to Packer as above mentioned as lay north of a line twenty-six feet southerly from the southerly line of Montague street extended.    Said deed contained the following provision, coming immediately following the description: " Together with all rights, privileges, advantages and emoluments to the said piece of ground, wharf and bulkhead belonging or in any wise appertaining and to the land under the water of the East River below low water mark between the northerly and southerly boundary lines thereof if such lines were extended into the East River to the exterior line established or to be established for pier edge by the Legislature of the State of New York,    *    *    *."

There was no reservation of any easement of access over the waters of the slip. This deed did not include pier 15, nor the upland and tideway adjacent thereto. The plaintiff here claims under John H. Prentice so far as the upland and tideway occupied by or adjacent to pier 15 are concerned. As to land under water, that is beyond low-water mark occupied by pier 15, plaintiff's claim seems to be based on a grant from the state made April 1, 1902.

The result is that plaintiff is not in position to claim that easements of access over the waters of the slip were created by the deeds under which it claims title to piers 14 and 15. Hence this case is not within the authority of such cases as *Langdon* v. *Mayor of City of New York*, 93 N. Y. 129, and *Williams* v. *Mayor*, 105 id. 419.

But the question still remains whether plaintiff on December 7, 1914, had independent of any statute any rights or easements in or over the waters and lands under water in the slip of such a nature as to be entitled to claim compensation for the destruction thereof. The authorities in this state are in such a condition that it is not easy to answer this question. The Court of Appeals in its opinion in the condemnation proceeding (*Matter of Public Service Comm.* [*Montague St.*], 224 N. Y. 211) from which I have already quoted, seems to have been of the opinion that plaintiff's claim to compensation depended wholly on the act of 1857. The statements above quoted were, however, not necessary to the decision of the case, and hence I have examined into the question at some length. *Matter of McClellan*, 146 App. Div. 594; affd., 204 N. Y. 677, on opinion below, is relied on by plaintiff in support of the proposition that plaintiff's right to compensation does not depend on the statute. In that case, however, the question litigated was whether the dock company owned the fee of the lands under water in a slip between two of its piers within the lines of Joraleman street, projected. Incidentally, Mr. Justice Carr, writing for the Appellate Division, remarked (at p. 598): " Whatever rights the dock company had in these lands were such as, under common-law principles, were incident and appurtenant to the ownership of the piers above described. Under these principles, the owner of the piers had a right of reasonable access over the waters covering the surrounding lands, though title to such lands was in the State, and the owner had likewise a right and a positive duty, imposed by statute, to keep the slip between its piers so dredged out, when necessary, as to permit the ordinary use thereof by commerce. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *White* v. *Nassau Trust Co.*, 168 id. 149.) "

The cases cited do not support any such broad proposition. In the *Langdon* case the plaintiff's rights depended upon a grant of a

right of wharfage, and in the *White* case the dredging held to be proper was on defendant's own land and partly on lands belonging to the city, and plaintiff's claim was based on the subsidence of his adjoining lands, which was held to be *damnum absque injuria.* In the *McClellan* case the city, relying in part at least upon the act of 1857, conceded in its brief both in the Appellate Division and in the Court of Appeals, that the dock company had easements of access over the waters of the slip.

It is clear to me that the city in the interest of navigation could without compensation to plaintiff have built or authorized structures in the slip which would have cut off access to plaintiff's piers over the waters of the slip, for whatever rights plaintiff may have had in the slip they were subject to the paramount right of the public, as represented by the state or the city, to improve the waterfront for the benefit of navigation. *Sage* v. *Mayor,* 154 N. Y. 61, and authorities cited therein; *Appleby* v. *City of New York,* 235 id. 351. If, therefore, the city had decided, say, to re-establish the Wall Street ferry, it could have done so without paying the plaintiff for interfering with access to its piers. *Union Ferry Co.* v. *Fairchild,* 191 App. Div. 639. But the public right to destroy private easements in lands under water exists only for the benefit of navigation and not for any other purpose. *Matter of City of New York,* 168 N. Y. 134. The use of the slip for the construction of a subway was not in the interest of navigation, and hence I think the city as representing the public had no right to construct a subway in the slip and thus close the slip without compensating plaintiff for the loss of such easements of access as it has over the waters of the slip.

We are thus thrown back upon the fundamental question in the case, namely, has an owner of upland and land under water in front of the same, having a pier constructed at or near the side boundary line of his land and land under water, at common law the right of access to the side of that pier over adjacent land under water in the private ownership of another? That question is not conclusively answered by any of the authorities above cited, either because of the existence of facts not present here, or because they proceed upon the assumption that the provision for spaces of 100 feet between piers contained in the act of 1857 is still in force. I think, however, that the trend of the recent cases in this state is in favor of the existence of such a right. See particularly *Appleby* v. *City of New York, supra.*

I hold, therefore, that the plaintiff had on December 7, 1914, a right of access to its piers over the waters of the slip, which was a valuable right, and of which it could not be deprived without

compensation, except by the action of the public authorities for the benefit of navigation. The plaintiff is, therefore, entitled to recover of the city its damages for the destruction of that right, as of the date last above mentioned. In determining the amount of such damages, the fact must be taken into consideration that the proper city authorities were not bound by any law requiring a distance of at least 100 feet between piers, and could, in improving the waterfront, have authorized the erection of a pier or other structure in the slip in aid of navigation — they could, for example, have built there a ferry house and racks, or a float-bridge, or a canal boat terminal. It should be taken into consideration, however, that the plaintiff might, with the permission of the proper authorities, have extended its piers or built new piers extending to the present pierhead line, and that it might, with like permission, have dredged the slip outside the bulkhead line. See *Appleby* v. *City of New York, supra*. I adopt the lowest figures given by the plaintiff's experts, but depreciate them twenty-five per cent because of the possibility of the appropriation of the slip for purposes of navigation, which gives a fee damage of $96,022.50.

The city has no claim against the defendant Flinn-O'Rourke Company for the damages which it will have to pay. The terms of the contract relied upon by the city in support of this claim do not contemplate that the contractor should pay compensation for property or property rights necessary to be acquired for the construction of the subway. Nor has the city any claim against the Flinn-O'Rourke Company for the costs or expenses of the action.

The plaintiff has no claim against the Flinn-O'Rourke Company because of the alleged occupation by its structures of land under water claimed by plaintiff lying between the northerly side of pier 15 and the southerly line of the land acquired in the condemnation proceeding, because the stipulation of December 9, 1914, permitted the occupation of the water and land under water "lying in and between said piers."

Judgment for the plaintiff against the defendant city of New York for $96,022.50 and interest thereon from December 7, 1914, besides taxable costs and an additional allowance of $2,000.

Judgment for the defendant Flinn-O'Rourke Company against the plaintiff dismissing the complaint, with costs and an additional allowance of $1,000, and against the defendant city of New York, dismissing the cross claim made by the city against the Flinn-O'Rourke Company, with taxable costs. Submit requests to find within ten days.

Judgment accordingly.